MARILYN L. FITE, WIDOW OF LARRY I. FITE, DECEASED, APPELLANT, V. AMMCO TOOLS, INC., APPELLEE.

258 N. W. 2d 922

Filed November 2, 1977. No. 41160.

Yost, Schafersman, Lamme & Hillis, for appellant.

William M. Lamson, Jr., and John K. Green of Kennedy, Holland, DeLacy & Svoboda, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

This is an appeal from the Nebraska Workmen's

Compensation Court. The court held that plaintiff had failed to maintain the burden of proving by a preponderance of the evidence that her deceased husband Larry I. Fite was in the course of his employment at the time of his death on July 2, 1975. The decedent was killed as the result of a crash of a Cessna airplane near the Greenwood Interchange of Interstate 80 in Nebraska. The plaintiff appeals.

Plaintiff assigns as error the compensation court's refusal to admit into evidence certain statements of the decedent concerning his purpose or intent and which the plaintiff contends would tend to prove that the decedent was within the scope of his employment at the time of his death. The decedent was the district sales manager for the defendant-appellee Ammco Tools, Inc. The defendant corporation manufactures, sells, and services automotive equipment, particularly brake-service equipment. The decedent's territory was Nebraska, South Dakota, and western Iowa. The decedent owned an airplane that he used almost exclusively for business. The defendant was aware of and approved the use of his airplane to make sales and service calls. The plaintiff introduced evidence as to the work patterns of the decedent 2 days prior to the date of his death. No evidence was introduced as to the decedent's movements or work activities on the date of death, from the time he left his home in Fremont until he was seen at the Fremont Airport. The only evidence as to the decedent's activity on the date of death were the three declarations of intent. The court in each of the three instances excluded the evidence as proof of the principal issue: Was the decedent acting within the scope of his employment at the time of his death?

The testimony of the widow Marilyn L. Fite was that the decedent left his home on July 2, 1975, between 8 and 8:30 a.m. "Q- Did you have any conversation with him when he left? Just yes or no. A- Yes.

Q- And would you tell the Court what your husband said to you before he left home? MR. LAMSON: Your Honor, I'm going to object to that question as calling for a hearsay statement, also a self-serving declaration, * * *. I do not feel that the conversation falls within any accepted exception to the hearsay rule. * * * MR. YOST * * * So, this statement is offered as evidence of a material fact; that is, what the decedent indicated he was going to do, where he was going on that day, and it is more probative on that point than any other evidence * * *. I would conclude only by saying that this is precisely the type of a situation that the new rules are designed to cover, and the testimony is admissible. * * * PRESIDING JUDGE: Well, the objection will be overruled with this explanation and this qualification: That the statement made by the deceased, Larry Fite, will be received as evidence only that such statement was made by him at that time, and not as evidence of the truth of any such statement that he may have made at such time. Q- * * * Again, Mrs. Fite, what did your husband say to you as he left home that morning? * * * A- He said he was busy and had to go to Lincoln and Omaha.''

The decedent's father Ansel Fite testified that at about 7:30 a.m. on July 2, 1975, he spoke on the telephone with the decedent. ''Q- And who called — who made the call? You or your son? A- Larry made the call. Q- And with whom did he speak first? A- He spoke to me first. Q- And would you relate that conversation to the Court as best you can, please? MR. LAMSON: Your Honor, I'm going to object to that. It's hearsay. It does not fall within the exception of the hearsay rule. MR. YOST: This is the same argument we've been through before * * *. And we maintain it is admissible for the same reasons previously stated with regard to the testimony of Mrs. Fite. PRESIDING JUDGE: The objection will be overruled with the same limitation,

the same qualification as given earlier, namely, that any declaration of the deceased now given will be received as evidence only that such declaration was made and not as to the truth of the declaration. Q- * * * Would you relate that phone conversation, please, Mr. Fite? A- Well, he called me, approximately, at 7:30 in the morning. * * * And he wanted to know how we was. And the conversation, just normally, conversation talking to him. And he says, 'Well,' he says, 'I'm going to have to go.' He didn't talk too long. He says, 'I've got to go to work.' "

Mr. Eldon Nielsen, a friend of the decedent, testified that on July 2, 1975, as he was driving on U. S. Highway No. 30 past the Fremont Airport, he saw the decedent Larry Fite. The decedent was then standing in front of the hangar and waved at the witness. The witness turned around and went back to the hangar where he had a conversation with the decedent. It was between 10:30 and 11 o'clock in the morning. The witness was a serviceman for Amoco Oil Company. The decedent worked for Ammco Tools, Inc., and on occasion the decedent and the witness had worked together demonstrating equipment. The decedent and witness had flown together in the decedent's airplane on a prior occasion for a business trip to Wisconsin to work on front end and brake machines. The conversation generally related to the decedent's request that the witness fly with him. The question was asked: "Q- My next question, Mr. Nielsen, won't call for yes or no answer. You were asked whether or not there had been any indication given to you about whether the trip was business or pleasure. And you started to give your answer and to explain it as something more than yes or no terms. I'd ask you to do so now. A- The reason why I started to say this is, he asked me where I was going. And I was going on a service call. And I said, 'I have work to do.' And he says, 'So do I. We will go together some other

time.' '' In response to a motion to strike, the court held: " * * * the conversation received on the same basis as previously, namely, that it was — as evidence — such statement was made but not as to the truth of the statement.''

Other evidence was introduced by the plaintiff that the decedent had work appointments in Omaha and Lincoln during the week in which he was killed.

The Nebraska Rules of Evidence do not apply to proceedings before the Nebraska Workmen's Compensation Court. See, §§ 27-1101 (4) (d) and 48-168, R. R. S. 1943. Section 48-185, R. S. Supp., 1976, provides in appeals from the Workmen's Compensation Court: "The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award.''

The case presents two questions for review: (1) Were the three statements by the decedent admissible under the Nebraska Rules of Evidence as exceptions to the hearsay rule and as proof of the truth of the matters asserted in the statements? (2) If admissible, what is the effect of the refusal to admit relevant and admissible evidence from the trial of the cause before the Nebraska Workmen's Compensation Court?

Section 27-803, R. R. S. 1943, states: " * * * the following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * (2) A statement of the declarant's then existing state

of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), * * *.'' Section 27-803 (2) is in the precise language of the Federal Rules of Evidence, section 803 (3). The Report of the House Committee on the Judiciary states: "Rule 803 (3) was approved in the form submitted by the Court to Congress. However, the Committee intends that the Rule be construed to limit the doctrine of Mutual Life Insurance Co. v. Hillmon, 145 U. S. 285 (12 S. Ct. 909, 36 L. Ed. 706), 295-300 (1892), so as to render statements of intent by a declarant admissible only to prove his future conduct, not the future conduct of another person." Rule 803 (3) did not change existing Nebraska law where statements evidencing an intent, design, or plan to do some specific act in the future are admissible. Sutter v. State, 102 Neb. 321, 167 N. W. 66; Kirkpatrick v. Chocolate Sales Corp., 127 Neb. 604, 256 N. W. 89. However, a statement of intent related to the destination and purpose of a journey is admissible only if it is made at or about the time of the act or departure. Gering v. School Dist., 76 Neb. 219, 107 N. W. 250.

At the time the first two statements were made to the decedent's father and to his wife, the decedent was in preparation for departure from his home. The statements evidenced a present intention to do a future act, and that act was to go to work. The statements were supportive of the plaintiff's claim in the compensation court tending to establish that the deceased's death was in the course of his employment. The third statement at the hangar at the Fremont Airport was again immediately prior to decedent's anticipated departure in the aircraft. This statement is capable of being interpreted as a simple response to a statement made by the companion or, as contended by the plaintiff, a declaration by decedent indicating that he also had to go to work. The statements offered were clearly exceptions to the general

prohibition against hearsay. Under sections 27-801 and 27-803 (2), R. R. S. 1943, such statements were admissible.

Counsel for the defendant suggests that the plaintiff cannot raise error in this court since she did not make an offer of proof in the trial court. The contention is without merit. It is elementary that the purpose of an offer of proof is to bring to the attention of the trier of fact and the appellate court on review the substance of the evidence offered so that both the trial court and the appellate court may determine whether the refusal to accept the evidence was error. Here the conversations were admitted into evidence but for a limited purpose only. The compensation court and this court have the answers from the witnesses themselves. When the condition of the record and form of the question itself shows that it is relevant and competent, no offer of proof is necessary. In re Estate of Johnson, 100 Neb. 791, 161 N. W. 429.

This jurisdiction has repeatedly held that the Workmen's Compensation Act is one of general interest, not only to the workman and his employer, but as well to the state and it should be so construed that technical refinements of interpretation will not be permitted to defeat it. Speas v. Boone County, 119 Neb. 58, 227 N. W. 87. We are concerned here with the refusal of the compensation court to admit evidence that would be admissible in all the trial courts of this state; evidence which would directly tend to prove the principal issue of the case, whether the decedent was acting within the course of his employment at the time of his death. Given the beneficent purposes of the Nebraska Workmen's Compensation Law in the exemption from the Rules of Evidence, section 27-1101 (4) (d), R. R. S. 1943, the compensation court is empowered to admit evidence not admissible in the trial courts of this state. It does not, as we understand it, grant to the compensation court

the right to establish rules of evidence which are more restrictive than the rules applicable to the trial courts of this state. Rather, their purpose was to allow the compensation court to "make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of sections 48-101 to 48-190." § 48-168, R. R. S. 1943. Thus, the compensation court, as we construe those sections, is permitted to admit evidence which over proper objection could not be introduced in a trial court in this state. We do hold that the parties litigating before a compensation court are permitted to introduce evidence which is admissible in the trial courts in this state. The evidentiary rules established by the compensation court may not be more restrictive than those of the trial courts.

Under the standard of review set forth in section 48-185, R. S. Supp., 1976, we are not permitted to make an independent determination in this court. Rather, in our review, as set forth above, we determine that the compensation court "acted without or in excess of its powers," in failing to admit, as evidence of the truth of the matter asserted, the statements offered by the plaintiff. We are unable to determine what the compensation court would have decided had the declarations been admitted in the first instance. Therefore, we must reverse the judgment and remand the cause to the compensation court with directions to reconsider its decision in light of the admissible character of the declarations which were excluded during the three-judge hearing.

REVERSED AND REMANDED WITH DIRECTIONS.