ROMANA I. OLIVOTTO, WIDOW OF JOE OLIVOTTO, APPELLEE AND CROSS-APPELLANT, V. DEMARCO BROTHERS COMPANY, APPELLANT AND CROSS-APPELLEE.

732 N.W.2d 354

Filed June 1, 2007.   No. S-05-1526.

Thomas F. Hoarty, Jr., of Byam & Hoarty, for appellant.

Michael J. Lehan for appellee.

Jerald L. Rauterkus and Patrick R. Guinan, of Erickson & Sederstrom, P.C., L.L.O., for Cornhusker Casualty Company, workers' compensation carrier for appellant.

Ronald E. Frank, of Sodoro, Daly & Sodoro, for St. Paul Fire & Marine Insurance Company, workers' compensation carrier for appellant.

HEAVICAN, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Joe Olivotto (Olivotto) worked for DeMarco Brothers Company (DeMarco) as a terrazzo installer from 1954 to 1980. During this time, Olivotto was allegedly exposed to asbestos. He died in 2004 from malignant pleural mesothelioma. In this workers' compensation action, Romana I. Olivotto (Mrs. Olivotto) sought from DeMarco death benefits and compensation for medical bills. The trial court awarded her a weekly indemnity benefit, medical expenses, and burial expenses. A review panel of the Workers' Compensation Court affirmed the award of medical and burial expenses but concluded the trial court erred in finding that Mrs. Olivotto was entitled to a

weekly indemnity benefit. DeMarco appeals, and Mrs. Olivotto has cross-appealed.

## SCOPE OF REVIEW

■ Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005).

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing. *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005).

## FACTS

Olivotto was employed by DeMarco from 1954 to 1980 as a terrazzo installer, working in new construction and remodeling jobs in the Midwest. Terrazzo is a cement-based product that is mixed with marble chips and then ground to a marble-like finish.

Olivotto retired sometime in 1980 due to a heart condition not related to any occupational injury or disease. In November 2002, Olivotto began experiencing difficulties with the accumulation of fluid in his lungs. He was first seen at Nebraska Methodist Hospital in January 2003. He was diagnosed in July with malignant pleural mesothelioma, and he underwent a surgical procedure to drain his pleural effusion. In August, he underwent a second surgery at the Mayo Clinic to address complications.

On December 15, 2003, Olivotto filed a petition in the Workers' Compensation Court seeking compensation and benefits for medical expenses. He alleged that during his employment with DeMarco, he was injuriously exposed to asbestos while working as a terrazzo installer.

The president of DeMarco testified that the tiling materials, terrazzo marble, and grout used in the trade did not contain asbestos. His company did extensive tilework in schools, offices, airports, hospitals, and shopping malls. The construction was primarily new construction rather than remodeling, where one normally encountered asbestos. He testified that terrazzo installers generally did not work alongside other tradesmen such as asbestos insulators.

DeMarco denied that Olivotto sustained any occupational disease or resulting disability arising out of or in the course of his employment and alleged that if there was any injurious exposure, it did not occur during Olivotto's employment with DeMarco. Olivotto died on April 24, 2004, and the parties stipulated that the petition could be amended to reflect Olivotto's death and substitute Mrs. Olivotto as the named plaintiff.

The trial court found by a preponderance of the evidence that Mrs. Olivotto sustained her burden of proof that her husband was exposed to asbestos in the work environment from 1954 to 1980. The court relied on the testimony of Olivotto and a coworker, John DePellegrin, that throughout the course of their employment as terrazzo installers, they were exposed at various times to asbestos materials used by other contractors and tradesmen. DeMarco objected to this testimony on the bases of hearsay and foundation, but the court found that while there was some technical merit to such objections, the Workers' Compensation Court was not bound by the usual common-law or statutory rules of evidence pursuant to Neb. Rev. Stat. § 48-168 (Reissue 2004). The court concluded that Olivotto and DePellegrin, having worked in the construction trade for a combined total of more than 75 years, had the requisite experience and knowledge to identify the existence of asbestos in their work environment.

The trial court noted Olivotto had testified that in the course of his career as a terrazzo installer, other tradesmen would be working at some of the same job locations installing asbestos. He did not recall any specific job where asbestos was used but stated that when he worked on a job at a post office sometime in the 1970's, workers in the same area sprayed asbestos. He testified that he was told to leave the area because asbestos was being sprayed and because the asbestos made the worksite

dangerous. He also remembered the spraying of asbestos in the 1960's. He testified that he removed floor tiles in a doctor's office sometime in the 1960's or 1970's and that there was asbestos in the tiles. However, Olivotto, who had limited ability to read English, admitted on cross-examination that he could not read the word "asbestos" and that he did not recall any one specific exposure.

Olivotto's coworker, DePellegrin, testified that he had worked for DeMarco from 1952 to his retirement in 1999 and that he had worked with Olivotto most of the time Olivotto worked for DeMarco. DePellegrin testified that they worked on a variety of construction and remodeling projects, including a post office, numerous schools, and hospitals. There was often a powdery substance in the air. DePellegrin said there were bags on the worksite which had the word "asbestos" on them. He could not remember exactly the dates or locations where asbestos was sprayed, because he did not pay much attention to it. He was sure there had been asbestos at a post office job.

DePellegrin stated on cross-examination that at the time he was working with Olivotto, asbestos was in almost every building. He stated that when asbestos was sprayed, it created dust, which the workers inhaled. The asbestos insulators were sometimes close to where he and Olivotto were working. On many occasions, DePellegrin saw bags of asbestos materials being mixed for use as insulation.

In spite of DePellegrin's difficulty remembering dates and jobs performed, the trial court determined that he was a credible witness and that although DePellegrin did not remember specific occasions when asbestos insulators were working nearby, he knew they had been present. The court found by a preponderance of the evidence that Mrs. Olivotto had sustained her burden of proof that her husband was exposed to asbestos in the work environment from 1954 to 1980.

The trial court found sufficient evidence that Olivotto's malignant pleural mesothelioma was caused by asbestos exposure on the job. It also found that there was sufficient authority to allow Mrs. Olivotto to bring a claim for outstanding medical expenses. DeMarco was ordered to pay medical expenses incurred for the treatment of Olivotto's mesothelioma in the sum of $113,594.25

and to reimburse Mrs. Olivotto for her insurance deductible of $4,800, as well as expenses for transportation and lodging at the Mayo Clinic of $726.28.

As to an indemnity benefit and burial expenses, the trial court determined that Olivotto was "injured" within the meaning of the Nebraska Workers' Compensation Act when he became disabled and sought treatment with Dr. Matthew McLeay, a pulmonologist, on January 29, 2003. The court stated that the evidence concerning Olivotto's exposure to asbestos from the beginning of 1954 until his retirement in 1980 made it difficult to pinpoint the last injurious exposure. The court found that Olivotto experienced a generalized exposure to asbestos in the work environment and that the last injurious exposure occurred on the final day Olivotto worked for DeMarco, which was September 30, 1980. The court found that Olivotto was entitled to a weekly indemnity benefit from the date of his injury, which was January 29, 2003. Mrs. Olivotto was therefore entitled as the surviving spouse to a weekly indemnity benefit from the date of Olivotto's death on April 24, 2004, in the amount of $297.76 per week during the pendency of her widowhood. The court awarded reasonable burial expenses not to exceed $6,000.

A Workers' Compensation Court review panel heard the case on July 26, 2005. Before the review panel, DeMarco assigned 12 errors concerning the trial court's award. Eight of the errors related to findings of fact made by the trial court or the admission of evidence at trial. The review panel affirmed the trial court's factual determination that Mrs. Olivotto sustained her burden of showing by a preponderance of the evidence that Olivotto's death from mesothelioma was the result of his exposure to asbestos while employed by DeMarco. The review panel found there was sufficient evidence which, if believed by the trier of fact, would support the trial court's finding of medical causation and its finding of the date of Olivotto's last injurious exposure. The review panel affirmed the trial court's findings as to compensation for Olivotto's medical bills and the right of Mrs. Olivotto to proceed without filing a separate action for revivor.

However, the review panel concluded that the trial court had erred in its determination that Mrs. Olivotto was entitled to a

weekly indemnity benefit. It opined that under the Nebraska Workers' Compensation Act, an injury has occurred as the result of an occupational disease when violence has been done to the physical structure of the body and a disability has resulted. Olivotto retired from DeMarco for reasons unrelated to mesothelioma, which did not manifest itself until shortly before his death. At that time, Olivotto had been retired for 23 years. Because he did not work after his retirement from DeMarco, it followed that Mrs. Olivotto was not entitled to a weekly indemnity benefit because no earnings were being accrued by Olivotto at the time the occupational disease resulted in injury.

The review panel therefore affirmed the award of the trial court in all respects except for its finding that Mrs. Olivotto was entitled to a weekly indemnity benefit. DeMarco appeals, and Mrs. Olivotto has cross-appealed.

## ASSIGNMENTS OF ERROR

DeMarco's assignments of error claim that the trial court erred (1) in determining that Mrs. Olivotto met her burden to prove by a preponderance of the evidence that Olivotto suffered an accident or occupational disease arising out of or occurring in the course of his employment with DeMarco; (2) in admitting the testimony of DePellegrin and Olivotto concerning Olivotto's alleged exposure to asbestos-containing materials; (3) in receiving the opinion testimony of Drs. P. James Connor and Claude Deschamps concerning the causal relationship, if any, between Olivotto's development of mesothelioma and his work for DeMarco; (4) in finding that Olivotto's development of mesothelioma was causally related to his work for DeMarco; (5) in finding that Olivotto's last injurious exposure to asbestos occurred on September 30, 1980; (6) in refusing to admit the summary of the court's compliance officer dated January 2, 2004, concerning insurance coverage for DeMarco and the letter of insurance counsel regarding the policy information; and (7) in its calculation of medical expenses incurred by Olivotto and in awarding reimbursement for those medical expenses to Mrs. Olivotto in her capacity as a widow.

On cross-appeal, Mrs. Olivotto asserts that the review panel erred in failing to affirm the award of a weekly indemnity benefit

and that the trial court erred in affirming that the last date of injurious exposure was September 30, 1980.

## ANALYSIS

Our review is governed by the following legal principles: In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing. *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005). In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of or occurring in the course of the employment proximately caused an injury which resulted in disability compensable under the act. *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998). When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

### ADMISSION OF EVIDENCE

DeMarco claims that the trial court erred in concluding Olivotto suffered an occupational disease arising out of his employment and that it was error to admit Olivotto's and DePellegrin's testimony to prove Olivotto's exposure to asbestos. DeMarco asserts that the testimony lacked foundation and was hearsay and that Olivotto and DePellegrin did not have the requisite personal knowledge to render an opinion concerning the existence of asbestos at any worksite.

DePellegrin testified that he saw bags marked "asbestos" at one or more of the worksites. DeMarco argues this testimony was hearsay because it was an out-of-court statement offered to prove that Olivotto was exposed to asbestos during his employment with DeMarco.

The Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence or by any

technical or formal rules of procedure. § 48-168. See, *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996); Workers' Comp. Ct. R. of Proc. 10A (2006). Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Fay v. Dowding, Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001). On appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005).

In *Fite v. Ammco Tools, Inc.*, 199 Neb. 353, 258 N.W.2d 922 (1977), we discussed the scope of the Nebraska Workers' Compensation Act. We stated that the act was one of general interest, not only to the worker and his employer, but to the state as well, and that the act should be construed so that technical refinements of interpretation would not be permitted to defeat it. Given the beneficent purposes of workers' compensation law in Nebraska, the compensation court is empowered to admit evidence not normally admissible under the rules of evidence applicable in the trial courts of this state. See *id.* The court can admit such evidence in order to investigate cases in the manner it judges is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act. See *id.* The act permits the compensation court to admit evidence that, over a proper objection, could not be introduced in a trial court in this state. See *id.*

In the case at bar, the question is whether the trial court abused its discretion in the admission of Olivotto's and DePellegrin's testimony. We conclude that it did not. There was sufficient foundation for testimony about exposure to asbestos because the trial court found that Olivotto and DePellegrin were skilled tradesmen and had the requisite experience and knowledge from more than 75 years of working in the construction trade to know the existence of asbestos in their immediate work environment. Such a determination was not an abuse of discretion by the trial court.

DePellegrin testified to various jobsites such as a post office, numerous schools, and hospitals where there was powder "flying"

around. He said there were bags on the worksite bearing the word "asbestos." Olivotto testified that when he worked on a job at a post office sometime in the 1970's, asbestos was sprayed and he was told to leave because the asbestos made the worksite dangerous.

DeMarco next argues there was no foundation for the evidence of causation. It claims that the medical history given to Olivotto's doctors was not consistent with his knowledge of exposure to asbestos. The trial court found by a preponderance of the evidence that Olivotto had sustained his burden of proof that he was exposed to asbestos in the work environment from 1954 to 1980. As the trial court noted, one of Olivotto's difficulties was that nearly a quarter of a century had passed from the date of his retirement until the first symptoms of mesothelioma appeared and he was diagnosed in 2003. We will not disturb the findings of fact by the compensation court unless they are clearly wrong. *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005). The evidence was sufficient to support these findings of fact, and they were not clearly wrong.

## MEDICAL CAUSATION

DeMarco argues that the trial court erred in finding that Olivotto's development of mesothelioma was causally related to his work for DeMarco. In its findings of medical causation, the trial court relied primarily upon the opinion of Dr. Connor. DeMarco claims that Dr. Connor's opinion was contrary to the evidence and was based upon testimony which should have been excluded for lack of proper foundation. DeMarco argues that Dr. Connor's testimony was not competent expert testimony of a causal connection between Olivotto's mesothelioma and his employment. DeMarco claims that Dr. Connor had no factual basis for his opinion because the documents upon which Dr. Connor relied were devoid of any information concerning the nature of Olivotto's employment with DeMarco and/or the potential exposure to asbestos in the course of Olivotto's employment.

The trial court found that Dr. Connor's report dated July 26, 2004, the medical records and reports of Dr. Deschamps, the depositions of Drs. Connor and Deschamps, and the affidavit of

Dr. Connor provided a "sufficient statement of medical causation" to establish that Olivotto's mesothelioma was due to asbestos exposure at work.

Prior to preparing his report, Dr. Connor reviewed a letter from Olivotto's attorney stating that Olivotto had previously testified in a deposition about his employment with DeMarco from 1954 to 1980. Dr. Connor was told that Olivotto and a coworker had previously testified concerning exposure to asbestos at various jobsites; that Olivotto had begun experiencing physical symptoms in 2002 and subsequently began a course of treatment which resulted in a diagnosis of malignant pleural mesothelioma following a biopsy at Nebraska Methodist Hospital; and that Olivotto sought treatment at the Mayo Clinic, where the diagnosis of mesothelioma was confirmed. Dr. Connor was also furnished with medical records from the office of Dr. McLeay, records from the Mayo Clinic, letters from Dr. Deschamps, and itemized bills incurred by Olivotto.

In a document labeled "Plaintiff's Rule 10 Medical Report," Dr. Connor stated that he had examined Olivotto's medical records and opined that the records reflected agreement with the medical community that mesothelioma was almost always asbestos related. He said that in cases in which the disease had not appeared to be asbestos related, the exposure may not have been remembered or observed. He was aware that the records included a history showing Olivotto had worked as a terrazzo installer on both new construction and remodeling projects in locations where plumbing, heating, insulation, and installation of wallboard containing asbestos was also underway. Dr. Connor reported that Olivotto had provided a history stating he knew he had been exposed to asbestos fiber in his occupation and that a coworker had given a similar history.

Dr. Connor stated that he had examined all of Olivotto's x rays, including CAT scans, that were available at Nebraska Methodist Hospital. He opined that the most dramatic film was that of a CAT scan showing Olivotto's right lung almost completely encased in a 1- to 2-centimeter-thick layer of mesothelioma. He noted that in reviewing records dating as far back as 2000, there had been evidence of thickened pleura, which could have been the result of asbestos exposure, and there were

instances where pleural calcification also might have been present, which was typical of asbestos exposure.

Dr. Connor also noted an area of rounded atelectasis in the lung base that he associated with asbestos exposure. Olivotto's pulmonary function test was consistent with asbestos-induced restrictive lung disease. There was also evidence of minimal obstruction, which Dr. Connor described as one of the earliest abnormalities found in people exposed to asbestos before clinical findings reveal any disease. Dr. Connor testified that he had reviewed the billing records for Olivotto's medical care and that all were related to care for mesothelioma and its associated complications.

It was Dr. Connor's opinion, based upon a reasonable degree of medical certainty, that the mesothelioma was caused by exposure to asbestos during Olivotto's work as a terrazzo installer.

In a workers' compensation case, a witness must qualify as an expert and the testimony must assist the trier of fact to understand the evidence or determine a fact in issue. The witness must have a factual basis for the opinion, and the testimony must be relevant. *Veatch v. American Tool*, 267 Neb. 711, 676 N.W.2d 730 (2004). From our review of the record, we conclude that Dr. Connor had a factual basis for his opinion.

Dr. Deschamps also gave a medical opinion that Olivotto's diagnosis of mesothelioma was related to occupational exposure to asbestos. Deschamps stated that occupational exposure to asbestos was a well-known factor in mesothelioma. The records attached to Dr. Deschamps' report showed that Olivotto had been a construction worker and had significant exposure to environmental hazards such as insulation, ceramics, and flooring over a 26-year period.

A determination concerning the sufficiency of the foundation for an expert's opinion is left to the discretion of the trial court. We conclude there was sufficient evidence to support the medical opinions of Drs. Connor and Deschamps, and the trial court did not abuse its discretion in admitting such evidence.

### DATE OF LAST INJURIOUS EXPOSURE

DeMarco argues that the trial court erred in finding that Olivotto's date of last injurious exposure to asbestos was September 30, 1980. DeMarco was unable to locate any of its

insurance records for the period of 1954 through 1980. The records of the compensation court disclose only certain periods of coverage.

The trial court found that Olivotto experienced a generalized exposure to asbestos in the work environment from the beginning of his employment until his retirement in 1980. It concluded that the last injurious exposure occurred on the final day Olivotto worked for DeMarco, which the court found was September 30, 1980.

This court addressed the issue of the date of last injurious exposure in *Morris v. Nebraska Health System*, 266 Neb. 285, 664 N.W.2d 436 (2003). Barbara Morris ceased her employment with Nebraska Health System on October 9, 1998, when she suffered a reaction to latex that required her to seek emergency medical treatment. She had noticed symptoms later associated with an allergy to latex in the 1980's, but the allergy was not diagnosed until 1997, when her employer was the University of Nebraska Medical Center. In determining her date of last injurious exposure, we stated it was necessary to first determine the date of disability and then search backward to find the last causal relationship between the exposure and the disability.

We determined that the date of disability was October 9, 1998, the date of the injury resulting in Morris' disability. We concluded that the record supported the trial court's findings that the exposure on October 9 bore the requisite causal relationship to her disability and that the trial court's finding that Nebraska Health System was responsible for her benefits was not clearly wrong. Because Morris' employment with Nebraska Health System on the date of her disability exposed her to latex, that employer was properly held liable for her compensation benefits under the "last injurious exposure rule."

In *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 290-91, 307 N.W.2d 514, 520 (1981), we stated:

The last injurious exposure, to be "injurious," must indeed bear a causal relationship to the disease. However, according to the authorities, this means simply that the exposure must be *of the type which could* cause the disease, given prolonged exposure. As described in *Mathis v. State Accident Insurance Fund*, 10 Or. App. 139, 499 P.2d

1331 (1972), an exposure which will support imposition of liability under this rule need not be proved to have been a "material contributing cause" of the disease. Indeed, to so require would bring the employee back to Square One by requiring "proof of the unprovable and litigation of the unlitigable." *Holden v. Willamette Industries, Inc., supra* at 301. As Larson notes at 17-87: "[O]nce the requirement of some contributing exposure has been met, courts . . . will not go on to weigh the relative amount or duration of the exposure under various employers . . . . As a result, in some cases carriers and employers that have been on the risk for relatively brief periods, perhaps only a few weeks, have nevertheless been charged with full liability for a condition that had developed over a number of years."

In *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995), the employee suffered from contact dermatitis due to substances in the workplace in 1960 and 1987 through 1990. The occupational disease did not manifest itself to a level of disability until March 1989. We stated:

Where an occupational disease results from the continual absorption of small quantities of some deleterious substance from the environment of the employment over a considerable period of time, an afflicted employee can be held to be injured only when the accumulated effects of the substance manifest themselves, which is when the employee becomes disabled and entitled to compensation. . . . Thus, the date that determines liability is the date that the employee becomes disabled from rendering further service. . . .

. . . .

The mere date of disability, however, does not end the inquiry. The second issue is the nexus between the exposure to the injury and the disability.

In the case of occupational disease, liability is most frequently assigned to the carrier who was covering the risk when the disease resulted in disability, if the employment at the time of disability was of a kind contributing to the disease. The employer or insurer at the time of the most

recent exposure which bears a causal relation to the disability is generally liable for the entire compensation.
*Id.* at 719-20, 529 N.W.2d at 789 (citations omitted).

Olivotto was injured within the meaning of the Nebraska Workers' Compensation Act when he became disabled and sought treatment on January 29, 2003. Because he was not employed on that date, the trial court relied on the last injurious exposure rule to determine the date of the last causal relationship between his disability and his work-related exposure. There was no evidence that Olivotto was exposed to asbestos in any situation not related to his work for DeMarco. The trial court therefore determined that the last injurious exposure was the final date of Olivotto's employment with DeMarco, September 30, 1980. This finding of fact has the effect of a jury verdict and will not be disturbed unless it is clearly wrong. See *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005). Although DeMarco asks us to find that the last injurious exposure was December 31, 1979 (the last date of record that DeMarco had workers' compensation insurance on Olivotto before he retired), we decline to do so.

## AWARD OF EXPENSES

DeMarco claims the trial court erred in its calculation of the medical expenses incurred by Olivotto and in awarding Mrs. Olivotto medical expenses incurred by her deceased spouse. DeMarco argues that absent an action for revivor, the workers' compensation statutes do not provide Mrs. Olivotto with a basis upon which to recover Olivotto's medical expenses and/or disability benefits.

Neb. Rev. Stat. § 48-122(3) (Reissue 2004) provides that upon the death of an employee from injuries covered by the workers' compensation statutes, reasonable expenses of burial, not exceeding $6,000, shall be paid to his dependent or personal representative. The trial court awarded Mrs. Olivotto funeral expenses of $6,000. DeMarco asserts that § 48-122 does not provide for payment of any other medical, travel, or lodging expenses to a surviving spouse.

This court has previously affirmed the award of medical and hospital expenses to a surviving spouse. See, *Anderson v. Bituminous Casualty Co.*, 155 Neb. 590, 52 N.W.2d 814 (1952);

*Cole v. M. L. Rawlings Ice Co.*, 139 Neb. 439, 297 N.W. 652 (1941). Neb. Rev. Stat. § 48-120(1) (Cum. Supp. 2006) states that the employer is liable for all reasonable medical, surgical, and hospital services. Section 48-122(3), in providing for burial expenses, states that the amount for those expenses shall not exceed $6,000, "without deduction of any amount previously paid or to be paid for compensation or *for medical expenses.*" (Emphasis supplied.) Section 48-122 therefore identifies the ongoing obligation of the employer to pay medical expenses to a dependent following the death of the employee.

The record shows that DeMarco entered into a stipulation providing that the petition could be amended to reflect Olivotto's death and substitute Mrs. Olivotto as the named plaintiff. DeMarco cannot complain on appeal about the failure to file a revivor action when it stipulated in the trial court that Mrs. Olivotto could be substituted as the named plaintiff. There was no error on the part of the trial court in awarding medical expenses to Mrs. Olivotto as Olivotto's widow.

DeMarco also argues that the trial court erred as a matter of fact in including in the award $4,800 as reimbursement to Mrs. Olivotto for a medical deductible paid. The trial court awarded Mrs. Olivotto a total of $119,120.53. This figure included medical expenses of $113,594.25, a "[r]eimbursement to widow for medical deductible paid" of $4,800, and transportation and lodging expenses of $726.28. Mrs. Olivotto testified that the $4,800 deductible was part of the $113,594.25 total for medical expenses. Thus, allowing her to recover that amount twice constituted double recovery. DeMarco's argument on this point appears to be correct, and we conclude that the award for medical expenses should be reduced by $4,800.

### ADMISSION OF INSURANCE RECORD

■ DeMarco does not argue the assigned error related to the admission of a summary from the Workers' Compensation Court compliance officer concerning insurance coverage. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *City of Gordon v. Montana Feeders, Corp., ante* p. 402, 730 N.W.2d 387 (2007). We therefore will not consider this assigned error.

SUMMARY OF APPEAL

Pursuant to § 48-185, an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005). The evidence is sufficient to support the award in all respects, as modified by the review panel, except for the $4,800 described above.

CROSS-APPEAL

In her cross-appeal, Mrs. Olivotto assigns as error the decision of the review panel reversing the award of indemnity benefits and affirming the date of last injurious exposure as September 30, 1980.

The review panel concluded that the trial court erred as a matter of law in finding Mrs. Olivotto entitled to a weekly indemnity benefit based on Olivotto's average weekly wage on the date of his retirement on September 30, 1980. The panel cited *Ludwick v. Triwest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004), for the proposition that an injury has occurred as the result of an occupational disease when violence has been done to the physical structure of the body and a disability has resulted. The panel noted that Olivotto retired for reasons unrelated to mesothelioma and that he had been retired for 23 years at the time the mesothelioma manifested itself. Olivotto did not work after his retirement and was not earning any wages at the time of his injury. Therefore, the panel determined that Mrs. Olivotto was not entitled to a weekly indemnity benefit because no earnings were being accrued by Olivotto at the time of his injury.

In *Ludwick*, 267 Neb. at 899, 678 N.W.2d at 526, we held:

[A] worker becomes disabled, and thus injured, from an occupational disease at the point in time when a permanent medical impairment or medically assessed work restrictions result in labor market access loss. . . . An employee's

disability caused by an occupational disease is determined by the employee's diminution of employability or impairment of earning power or earning capacity.
(Citations omitted.)

Olivotto had been retired for more than 20 years at the time his work-related disability developed. He did not work at any other job during that time. Thus, he suffered no loss of access to the labor market and had no diminution of employability or impairment of earning capacity. The review panel was correct in reversing the trial court's award of indemnity benefits.

Mrs. Olivotto also objects to the trial court's finding that Olivotto's date of last injurious exposure was September 30, 1980. That issue has been resolved earlier in this opinion. There is no merit to her cross-appeal.

CONCLUSION

The judgment of the review panel is affirmed except that we reduce the award for medical expenses by $4,800. The cross-appeal is dismissed.

AFFIRMED AS MODIFIED.

CONNOLLY, J., participating on briefs.