SHAYNE MURPHY, APPELLANT, V.
CITY OF GRAND ISLAND, APPELLEE.

742 N.W.2d 506

Filed December 14, 2007.    No. S-07-087.

Mandy L. Strigenz, of Sibbernsen & Strigenz, P.C., for appellant.

James D. Hamilton, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for EMC Insurance Companies on behalf of appellee City of Grand Island.

Patrick B. Donahue and Dennis R. Riekenberg, of Cassem, Tierney, Adams, Gotch & Douglas, for Travelers Insurance Company on behalf of appellee City of Grand Island.

Paul F. Prentiss and Benjamin E. Maxell, of Timmermier, Gross & Prentiss, for London GI Program on behalf of appellee City of Grand Island.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Shayne Murphy began working as a firefighter and emergency medical technician (EMT) for the City of Grand Island (City) in 1982. In 2002, he tested positive for hepatitis C, and he commenced an action against the City in the Nebraska Workers' Compensation Court. A single judge of the compensation court dismissed Murphy's claim, citing insufficient evidence of causation that the hepatitis C arose out of and in the course of his employment. A three-judge review panel of the compensation court affirmed the trial court's decision. Murphy appeals. The issue is whether there was sufficient evidence to establish that Murphy contracted hepatitis C in the scope and course of his employment with the City.

## SCOPE OF REVIEW

■ On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Olivotto v. DeMarco Bros. Co.*, 273 Neb. 672, 732 N.W.2d 354 (2007).

## FACTS

As part of Murphy's employment as a firefighter and EMT, he assisted ambulances on emergency response calls. He performed CPR, applied bandages, administered oxygen, and provided other medical services.

Murphy received additional EMT training in 1984 and 1985 and, thereafter, spent 70 percent of his time serving as an EMT. He often had direct contact with patients, estimating that he came into physical contact with at least 1 patient on each work shift and sometimes as many as 10. Murphy testified he remembered times he was exposed to bodily fluids.

The City implemented its current safety procedures and protocol for emergency personnel in approximately 1990. These procedures, commonly referred to as "universal precautions," require EMT personnel to wear latex gloves and sometimes goggles to prevent exposure to the bodily fluids of a patient. When the City implemented the precautions, it also began requiring emergency personnel to prepare incident reports, which described when personnel were exposed to a patient's bodily fluids.

Murphy submitted three separate incident reports. The first occurred on September 13, 1990, when a patient was combative and began vomiting and spitting on the ambulance crew. Blood was mixed with the saliva, and the patient's mouth and tongue were bleeding. The incident report showed that Murphy washed his hands and arms with soap and Clorox and that he was wearing latex gloves, but that the patient's bodily fluids may have come into contact with his eyes. Murphy did not remember specifically getting blood in his eyes, nose, or mouth, and his skin was intact at the time of the incident. Murphy did not know if the patient was infected with hepatitis C.

The second incident occurred on May 18, 1991, while Murphy was treating a patient who was gurgling and exhaling blood. Blood got onto Murphy's face, hands, and forearms. He washed his hands with "Clorox water" and was wearing gloves during the exposure, although one glove had a hole in it. The patient's bodily fluids possibly came in contact with Murphy's eyes. He did not know if the patient was infected with hepatitis C.

The third incident occurred September 11, 1992. Murphy was treating a surgical patient whose sutures had broken loose, causing the patient to bleed profusely from her femoral artery. Blood spattered onto Murphy's face, under his gloves, and on his arms, but his skin was intact. He washed his hands with "ER blood spill solution." He did not know if the patient was infected with hepatitis C.

In 2002, Murphy tested positive for hepatitis C. He initiated this lawsuit against the City in the Workers' Compensation Court, claiming that his contraction of hepatitis C arose out of and in the course of his employment with the City.

At trial, evidence was presented that Murphy had engaged in a number of activities over the course of his life that might have exposed him to hepatitis C. These activities included his participation in "Golden Gloves" boxing and football. Murphy was frequently exposed to blood, saliva, and other fluids of his boxing opponents and his teammates. Murphy also underwent arthroscopic surgery to repair a knee following a football-related injury. He was unsure whether he had received a blood transfusion during the surgery.

Murphy offered medical evidence from Drs. Michael F. Sorrell and John A. Wagoner, Jr. Sorrell opined that Murphy's hepatitis C was the result of his employment as an EMT with the City. Sorrell's opinion was based on the assumption that Murphy did not have any risk factors for hepatitis C other than his work. The facts considered by Sorrell were that Murphy was in a monogamous relationship with his wife and she tested negative for hepatitis C and that Murphy had never used intravenous drugs, had never been tattooed or pierced, had normal renal function, had never had dialysis, and had never received a blood transfusion.

Murphy also offered medical evidence from Wagoner in the form of a medical record in which Wagoner noted that Murphy's hepatitis C dated to an incident which was documented in 1990, where he experienced a "blood splash/spill and exposure." Wagoner did not provide a basis for his statement except to note that he had had a "lengthy discussion" with Murphy.

The City offered a report from Dr. Marvin J. Bittner, who stated that he could not conclude with a reasonable degree of

medical certainty that Murphy had acquired hepatitis C as the result of his work as an EMT. Bittner was also of the opinion that no other doctor could conclude that Murphy's hepatitis C was caused by his employment. Bittner opined that many risk factors could not be eliminated. The evidence showed that Murphy had engaged in high-risk activities, described above, that may have exposed him to hepatitis C, and Murphy could not say that patients he came into contact with were infected with hepatitis C.

After reviewing the evidence, the trial judge found that the evidence was insufficient to prove that Murphy had acquired hepatitis C during the scope and course of his employment. Murphy appealed to a three-judge review panel, which affirmed the trial court's decision, and Murphy now appeals to this court.

## ASSIGNMENTS OF ERROR

Murphy assigns two errors: (1) The Workers' Compensation Court erred in ruling that causation should be decided in favor of the City and dismissing his action and (2) the compensation court erred in relying on the medical testimony of Bittner.

## ANALYSIS

We must determine whether the Workers' Compensation Court was clearly wrong in finding that Murphy failed to prove that he contracted hepatitis C during the scope and course of his employment with the City.

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Olivotto v. DeMarco Bros. Co.*, 273 Neb. 672, 732 N.W.2d 354 (2007). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing. *Id.*

The trial court's opinion addressed the arguments that Murphy now makes on appeal. It was undisputed that Murphy had tested positive for hepatitis C, and it was known that hepatitis C could be contracted through various means and sources. According to the Centers for Disease Control and Prevention, the possible sources included intravenous drug use, 60 percent; sexual contact, 15 percent; blood transfusion, 10 percent; occupational, 4 percent; other, 1 percent; and unknown, 10 percent.

The court stated that Murphy had failed to establish that he was ever exposed to a patient who was infected with hepatitis C. When Murphy was exposed to blood or bodily fluids during his employment, there was no evidence of piercing of his skin by a sharp object, nor was there any persuasive evidence that blood was splashed onto a portion of his skin which was broken, cut, or otherwise presented an open entry point. The court noted that the incident reports submitted by Murphy indicated that his skin was intact and that he was possibly exposed via his natural body openings (nose, eyes, or mouth). However, Murphy could not affirmatively state that such was in fact the case. The court concluded that although Murphy was engaged in an occupation which obviously provided a risk for exposure, he was unable to provide any evidence whatsoever that he came in contact with the blood or bodily fluids of an individual infected with hepatitis C. The court noted that Murphy's case was further complicated by the fact that he had other significant risk factors outside his employment in which he was possibly exposed.

The court relied upon the opinion of Bittner, who stated that he could not reach a conclusion with a reasonable degree of medical certainty that Murphy had acquired hepatitis C as the result of his work as an EMT for the City and that he did not believe any other physician could reach that conclusion with a requisite degree of certitude.

The court opined that in the end, the case came down to a matter of proof and persuasion. Murphy had offered proof on the issue of causation in the form of an opinion by Sorrell, but the court was not ultimately persuaded. It could not dismiss the fact that there was no evidence that Murphy had ever been exposed on the job to the blood or bodily fluids of an individual who was infected with hepatitis C. The court stated that

Murphy's "occupational exposures" did not indicate that blood touched anything but intact skin and only "'possibly'" came into contact with his mucous membranes. The court concluded that at best, Murphy's evidence established he was in an occupation involving a higher exposure risk to hepatitis C than other jobs and that this proof was not enough.

Murphy argues that his occupation as an EMT placed him at greater risk of contracting hepatitis C. In support, Murphy relies upon Neb. Rev. Stat. § 71-514.01 (Reissue 2003), which provides in part: "The Legislature hereby finds that health care providers are at risk of significant exposure to the blood and other body fluids of patients as a result of their work." According to Murphy, this statute implies the Legislature has recognized that health care workers are at greater risk for infectious disease and, thus, hepatitis C should be considered an occupational disease. Murphy claims that such an adjudication would change the burden of proof placed upon him and he would not be required to prove the exact date and time that he contracted hepatitis C.

However, Murphy's argument fails to recognize that the problem was not that he failed to prove the date and time he contracted hepatitis C but that he failed to prove it was more likely than not that he contracted hepatitis C during the scope and course of his employment with the City. This was a fact that Murphy was required to prove, and the trial court found that he did not.

In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. *Sweeney v. Kerstens & Lee, Inc.*, 268 Neb. 752, 688 N.W.2d 350 (2004).

Whether an injury arose out of and in the course of employment must be determined from the facts of each case. *Misek v. CNG Financial*, 265 Neb. 837, 660 N.W.2d 495 (2003). In testing the sufficiency of the evidence to support the findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to

the successful party, and the factual findings by the compensation court have the same force and effect as a jury verdict in a civil case. *Worline v. ABB/Alstom Power Int. CE Servs.*, 272 Neb. 797, 725 N.W.2d 148 (2006). See, also, *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005).

In the case at bar, both sides presented evidence of how they believed Murphy contracted hepatitis C. It was within the trial court's discretion to determine which evidence was more persuasive.

Murphy next argues that the court erred in relying on the testimony of Bittner over that of Sorrell and Wagoner. Bittner's opinion stated that he could not conclude with a reasonable degree of medical certainty that Murphy had acquired hepatitis C as the result of his work for the City. Evidence from Sorrell and Wagoner stated that Murphy contracted hepatitis C as a result of his employment with the City.

It is Murphy's position that the evidence of Sorrell and Wagoner established to a reasonable degree of medical certainty that Murphy's hepatitis C was the result of his employment as an EMT for the City. However, Sorrell's opinion was based on the belief that Murphy had no risk factors for hepatitis C other than his work. The trial court noted that Murphy had many risk factors for hepatitis C other than his work, including contact with blood while engaged in football and boxing. Furthermore, Wagoner's notation was based on nothing more than a "lengthy discussion" with Murphy and was merely found within a medical record.

■ When the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Worline v. ABB/Alstom Power Int. CE Servs., supra.* It was within the discretion of the trial court to have concluded that Sorrell's and Wagoner's opinions were based upon faulty or incomplete information and to therefore decline to accept their conclusions. Bittner's opinion stated that he could not conclude with a reasonable degree of medical certainty that Murphy had contracted hepatitis C as the result of his work as an EMT. Bittner based his opinion on the fact that many risk factors could not be eliminated. The court pointed out that all the

experts were eminently qualified, but it was entirely within the court's authority to determine that Bittner's opinion was more credible. We decline to substitute our judgment for that of the trial court in accepting Bittner's opinion over that of Sorrell and Wagoner.

## CONCLUSION

For the reasons set forth above, we conclude that the Workers' Compensation Court did not err in finding insufficient evidence of causation. We therefore affirm the judgment of the Workers' Compensation Court review panel, which affirmed the judgment of the trial court.

AFFIRMED.