16 Neb. App. 829
JAMES RICK ZITTERKOPF, APPELLEE,
v.
AULICK INDUSTRIES AND THE UNITED FIRE GROUP, ITS WORKERS' COMPENSATION CARRIER, APPELLANTS.
No. A-07-1174.
Nebraska Court of Appeals.
Filed July 1, 2008.
John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellants.
Jerald L. Ostdiek, of Douglas, Kelly, Ostdiek & Bartels, P.C., for appellee.
SIEVERS, MOORE, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
The original workers' compensation award, which found existing both a compensable injury and unrelated sleep apnea, granted future medical care. In this appeal, we consider whether medication deemed necessary both to treat the sleep apnea and to reduce the side effects of injury-related pain medication qualifies for the benefit. Because we find the evidence sufficient to support the trial judge's award requiring the employer to pay for the medication, we affirm.

BACKGROUND
Aulick Industries (Aulick) employed James Rick Zitterkopf as a welder. The United Fire Group (United) provides Aulick's workers' compensation insurance. On April 29, 1999, Zitterkopf was injured in a work-related explosion.
On February 3, 2006, the Nebraska Workers' Compensation Court entered an award determining that Zitterkopf was totally and permanently disabled as the result of the 1999 accident, which arose out of and in the course of his employment by Aulick. The award required Aulick to pay for Zitterkopf's future medical care as required by Neb. Rev. Stat. § 48-120 (Cum. Supp. 2006). The award also determined that Zitterkopf was subject to severe obstructive sleep apnea and hypersomnia, which are congenital and not related to his employment. The award denied medical expenses for treatment of the obstructive sleep apnea. No appeal was taken from the original award.
On May 26, 2006, Zitterkopf filed a motion to compel Aulick to pay for Provigil, which he alleged was necessary "because of the side effects from the pain medications which [he was] prescribed because of the work[-]elated injury." On November 20, the Workers' Compensation Court trial judge conducted an evidentiary hearing. To the extent necessary, we will discuss the specific evidence in the analysis section below.
On March 20, 2007, the trial judge entered an order requiring Aulick to pay for the medication. The judge found that Provigil was prescribed for two reasons: (1) to treat the unrelated condition of sleep apnea and (2) to treat the drowsiness due to pain medication required because of the work-related injuries. The judge concluded that Zitterkopf was only required to prove that "one of the reasons for the prescription . . . is for treatment of side effects of pain medication." Analogizing to an employee's entitlement to benefits where a work-related injury combines with a preexisting condition to produce disability, the judge stated that "[t]he same would hold true where the necessity of prescribed medication is caused by pain medication used to treat the injury arising out of and in the course of the employee's employment also but [sic] is used to treat a preexisting condition or condition unrelated to the compensable accident."
Aulick and United petitioned for panel review. The Workers' Compensation Court review panel summarily affirmed, finding that "the judgment is based on findings of fact which are not clearly wrong and no error of law appears."
Aulick and United timely appeal to this court.

ASSIGNMENT OF ERROR
Aulick and United assign that the trial court erred in ordering them to pay for Provigil.

STANDARD OF REVIEW
[1] On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. Murphy v. City of Grand Island, 274 Neb. 670, 742 N.W.2d 506 (2007).

ANALYSIS
[2] Section 48-120(1)(a) authorizes an award of future medical expenses, including necessary medication. Section 48-120(1)(a) provides: "The employer is liable for all reasonable medical, surgical, and hospital services, including . . . medicines as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment. . . ."
This statutory section also empowers the Workers' Compensation Court to determine whether such expenses are necessary. "The compensation court shall have the authority to determine the necessity, character, and sufficiency of any medical services furnished. . . ." § 48-120(6).
[3] The Legislature enacted the Nebraska Workers' Compensation Act in order to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease. Foote v. O'Neill Packing, 262 Neb. 467, 632 N.W.2d 313 (2001). In order to accomplish the beneficent purpose of the act, it should be broadly construed. See id. In Foote, the Nebraska Supreme Court rejected the notion that the workers' compensation trial court lacked the authority to order, as part of a final award, payment of future medical expenses incurred more than 2 years after the date of the last payment, even if the medical expenses were reasonable and necessary and a result of the disabling injury. The Supreme Court recognized that the only limitation on medical benefits set forth in § 48-120 is that the treatment be reasonable and that the compensation court has the authority to determine the necessity, character, and sufficiency of the treatment furnished.
This broad construction nonetheless contemplates a causal connection between the compensable injury and the future medical care. "The employer, of course, may contest any future claims for medical treatment on the basis that such treatment is unrelated to the original work-related injury . . . or that the treatment is unnecessary or inapplicable." 262 Neb. at 476, 632 N.W.2d at 321.
[4] An often-cited treatise states this principle as follows: "There must, of course, be a causal relationship between the original compensable injury and the medical care." 5 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 94.03[1] at 94-38 n. 2 (2007). The writers cited a case in which a court of appeals affirmed an administrative decision determining that testing the worker for cardiac disease was not related to his work-related rib injury and declining to require the employer to pay for the testing. Id. (citing Stewart v. Dist. of Col. D. of Emp. Sec., 606 A.2d 1350 (D.C. 1992)).
In the case before us, the trial judge determined that Provigil was necessary to address Zitterkopf's reaction to the pain medication. The judge relied upon expert medical testimony. The first question posed is whether the evidence is sufficient to support the trial judge's finding.
[5] In testing the sufficiency of the evidence to support the findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, and the factual findings by the compensation court have the same force and effect as a jury verdict in a civil case. Murphy v. City of Grand Island, 274 Neb. 670, 742 N.W.2d 506 (2007).
Viewed in that light, the evidence shows that Provigil is medically necessary for at least two purposes: (1) to treat the side effects of pain medication necessitated by the compensable injury and (2) to treat the unrelated sleep apnea.
The trial judge primarily relied upon the evidence of Dr. Elena Zerpa, Zitterkopf's treating psychiatrist, who prescribed Provigil. Zerpa responded to two questionnaires of Zitterkopf's counsel and later testified by deposition.
The questionnaires naturally focus on the compensable purpose. In the first questionnaire, signed on February 9, 2005, Zerpa opined that Zitterkopf's "current pain medications and pain from his 4/22/99 work[-]related injury contribute to his extreme fatigue" and that "the prescribed Provigil [is] necessary because of [Zitterkopf's] extreme fatigue." In a questionnaire signed by Zerpa on March 10, 2006, she agreed that Provigil was "primarily necessitated by the side effects from the pain medication which . . . Zitterkopf is taking because of the 1999 work[-]related injury."
Zerpa's August 2006 deposition provides a more nuanced analysis:
Q. . . . [Y]ou testified that there are at least two different things that are causing his drowsiness?
A. Right, so far.
Q. The sleep apnea and the side effects. And . . . you signed a letter sometime in March of 2006, right?
A. Uh-huh.
.....
Q. Would you still agree though that . . . one of the primary reasons for the Provigil is the side effects from the pain medication?
A. Again, I cannot say it's just one thing. I think it's part of 
Q. It's one of 
A. It's one of the reasons.
[6] While Aulick and United focus upon Zerpa's admission that she could not isolate each factor in analyzing medical necessity, the trial judge resolved Zerpa's testimony favorably to Zitterkopf. When asked whether Zitterkopf would need Provigil if he did not have sleep apnea, Zerpa stated, "I can't say that. I will not be able to answer that question." Similarly, Zerpa resisted focusing solely on the side effects of the injury-related pain medication. The sufficiency of the expert's opinion is judged in the context of the expert's entire statement. Paulsen v. State, 249 Neb. 112, 541 N.W.2d 636 (1996). We cannot say that the trial judge's view of this evidence was clearly wrong.
[7] Aulick and United prefer the evidence of another physician, but the law empowers the trial judge to resolve conflicting medical testimony. Dr. Oscar Sanchez, a pain control specialist, testified by deposition that (1) when he first saw Zitterkopf, all of Zitterkopf's symptoms were secondary to the sleep apnea, more than Zitterkopf's then-current medications; (2) Zitterkopf's extreme drowsiness was more likely the result of the sleep apnea than of a reaction to the pain medication; (3) Provigil was more indicated for the symptoms of sleep apnea; and (4) it was more likely that Provigil was for the sleep apnea. However, like Zerpa, Sanchez could not opine whether, assuming that Zitterkopf did not have sleep apnea, Provigil would be appropriate for Zitterkopf. When the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. Lowe v. Drivers Mgmt., Inc., 274 Neb. 732, 743 N.W.2d 82 (2007). We decline to substitute our judgment regarding the conflict between the evidence of Zerpa and that of Sanchez. The trial judge's resolution of such conflict was not clearly wrong.
Having determined that the trial judge was not clearly wrong in determining that Provigil was necessary for both a compensable and a noncompensable purpose, we turn to the second question presented by this appeal: whether the employer is required to pay for such medication under the original award. The trial judge relied upon Heiliger v. Walters & Heiliger Electric, Inc., 236 Neb. 459, 461 N.W.2d 565 (1990), in which the Nebraska Supreme Court rejected an enhanced degree of proof requirement in workers' compensation cases involving a preexisting condition or disability. In Heiliger, the court returned to its earlier articulation of the governing rule: To sustain an award in a workers' compensation case involving a preexisting disease or condition, it is sufficient to show that the injury resulting from an accident arising out of and in the course of employment and the preexisting disease or condition combined to produce disability, or that the employment injury aggravated, accelerated, or inflamed the preexisting condition. This burden of proof, the court stated, requires the claimant to correspondingly negate that the unrelated condition is the sole cause of the disability. See id. In the instant case, the trial judge reasoned that because the medication was necessary for both the compensable and the unrelated purposes, Zitterkopf established a sufficient causal relationship.
[8,9] Aulick and United argue that the "but for" portion of the requirement of proximate cause precludes their liability for the expense of Provigil. In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. Sweeney v. Kerstens & Lee, Inc., 268 Neb. 752, 688 N.W.2d 350 (2004). A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred. Id. The latter portion of this definition articulates the "but for" requirement, which clearly applies in workers' compensation cases.
We agree that the employer would not be liable where treating the unrelated condition is the sole purpose of the medication. Under the analogy to Heiliger, Zitterkopf had the burden of proving that the sleep apnea was not the sole reason for the prescription of Provigil. Zitterkopf met this burden by proving that both the side effects and the apnea necessitated the medication. But Aulick and United would impose a significantly different burden, requiring Zitterkopf to prove that medication "would not have been prescribed in the absence" of the work-related injury. Brief for appellants at 17. In effect, Aulick and United's standard would require Zitterkopf to prove that the sleep apnea did not provide any reason for the prescription. We find no merit to this argument.
We return to the articulation in Foote v. O'Neill Packing, 262 Neb. 467, 632 N.W.2d 313 (2001), which contemplated an employer contesting future claims for medical treatment on the basis that such treatment is unrelated to the original work-related injury. Requiring the employee to prove that the unrelated condition is not the sole cause for the treatment merely restates the necessity of a causal connection between the original compensable injury and the medical treatmentin other words, the employee must prove that the treatment is related to the original injury. In the instant case, the trial judge's finding that Zitterkopf met this burden was not clearly wrong.

CONCLUSION
Under the deferential standard of review accorded to factual determinations of a workers' compensation trial judge, we find no clear error in the determination that Provigil was necessary to treat both the work-related side effects of pain medication and the unrelated condition of sleep apnea. We also determine that the trial judge's decision correctly applied the law requiring a causal connection between the original work-related injury and the subsequent medical treatment. Accordingly, we affirm the order of the review panel which affirmed the order of the trial judge.
AFFIRMED.