775 N.W.2d 179 (2009)
278 Neb. 776
Angelina MANCHESTER, appellant and cross-appellee,
v.
DRIVERS MANAGEMENT, LLC, a Nebraska corporation, appellee and cross-appellant.
No. S-09-062.
Supreme Court of Nebraska.
October 30, 2009.
*182 James E. Harris and Britany S. Shotkoski, of Harris Kuhn Law Firm, L.L.P., for appellant.
Daniel R. Fridrich, of Werner Enterprises, Inc., for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

NATURE OF THE CASE
MILLER-LERMAN, J.
Appellant, Angelina Manchester, was employed by appellee and cross-appellant, Drivers Management, LLC, as a truck-driver. On January 8, 2006, Manchester was in an accident and suffered injuries to her shoulder and a recurrence of her depression and agoraphobia. The Workers' Compensation Court awarded Manchester temporary total disability (TTD) benefits from January 8, 2006, through July 30, 2007, and penalties and attorney fees. On appeal, the three-judge review panel affirmed the award of benefits but reversed the award of penalties, interest, and attorney fees. Manchester appeals the review panel's reversal of the award of penalties, interest, and attorney fees. Drivers Management cross-appeals, claiming that Manchester was not entitled to an award of benefits. We find no merit to the cross-appeal and affirm the award of benefits. We find merit in the appeal, and we reverse the order of the review panel with respect to penalties, interest, and attorney fees and direct the compensation court to reinstate the award of penalties and attorney fees.

STATEMENT OF FACTS
Manchester has a history of suffering from mental illness, which history has been documented since 2002. In June 2002, Manchester was admitted to a hospital in Boise, Idaho, for a "[m]ajor depressive disorder[,] recurrent." Manchester was hospitalized in a State Hospital in Blackfoot, Idaho, from July 10 through July 25, 2002.
On July 16, 2002, while residing in the State hospital, Manchester applied for Social Security benefits. The Social Security Administration had Manchester examined by a doctor who identified that Manchester suffered from avoidant personality disorder, dependent personality disorder, problems related to the social environment, occupational problems, and problems with access to health care services. On December 19, the Social Security Administration awarded her total disability benefits, and Manchester was found to be totally disabled as of June 1, 2002.
In 2004, Manchester was assessed with recurrent major depression, and with panic disorder, agoraphobia, post-traumatic stress disorder in partial remission, borderline traits, and moderate stressors. In March, her therapist recommended that *183 she obtain a service dog, and within the same year, it was noted that she was becoming more independent with the use of her service dog.
Manchester participated in vocational rehabilitation programs through the Social Security Administration and went to school to become a truckdriver. On December 6, 2004, after finishing her truckdriving program, Manchester was hired by Drivers Management. Manchester's last recorded visit to her doctors for psychological treatment was on December 2.
Manchester drove a truck for Drivers Management from December 2004 until January 8, 2006, without incident. On January 8, 2006, Manchester was westbound on Interstate 84 following another truck when she hit some ice and left the road. Manchester testified that the left side of the truck's tractor came around and hit the truck's trailer. Suffering from a shoulder injury, Manchester was taken to a hospital and was instructed to be off work for 1 week.
On February 3, 2006, Manchester was diagnosed with a shoulder strain, cervical strain, and lumbar strain. The doctor noted that Manchester could return to work with restrictions of no repetitive lifting over 20 pounds, no pushing or pulling over 20 pounds of force, and limited use of the left arm.
On February 6, 2006, Drivers Management fired Manchester because she was in an accident due to negligence. After many visits to doctors concerning her shoulder injury, on June 29, Manchester was informed that she likely suffered from a labral tear, and she was ordered not to drive for work. Manchester had shoulder surgery on August 18. Manchester was to be off work until September 28. Ultimately, Manchester was physically unable to drive a truck until November 21, 2007.
At the same time Manchester was seeking treatment for her shoulder injury, Manchester was seeking treatment for a recurrence of her depression and agoraphobia. In early September 2006, Manchester called her former psychologist, with whom she had not met since December 2, 2004. Manchester told him that she was terminated from work and was falling apart, and he advised her to seek help.
Manchester went to Columbus Psychological Associates, L.L.P., and began receiving treatment from Paul Guinane, Ph. D., on November 7, 2006. In his notes discussing his sessions with Manchester, Guinane noted that Manchester's affect remained flat and that she had a sense of being an unproductive worker. Guinane noted that in addition to her physical pain, Manchester had other stressors in her life, including stress with her boyfriend and the litigation over her workers' compensation benefits.
In a letter dated December 5, 2006, Guinane stated that Manchester suffered from "Major Depressive Disorder" and "Panic Disorder with Agoraphobia." Guinane stated that the two main stressors preventing Manchester from reaching maximum medical recovery in her psychological functions were (1) her constant physical pain related to her work-related injury and (2) the pendency of her legal actions against Drivers Management which have not been resolved.
In January 2007, Manchester enrolled in a community college in Alabama. Ultimately, Manchester dropped out of school because of her severe agoraphobia and depression. In a note by Guinane dated May 15, 2007, he stated that Manchester's agoraphobic symptoms had significantly worsened to the point of forcing her to suspend her studies at college. Guinane noted that Manchester's prognosis would improve once the current stress of her *184 litigation case against Drivers Management ceased. He noted that Manchester should be employable in a field that provides her with significant support and low levels of stress. The trial judge found that the date of maximum medical improvement for Manchester's mental health injuries was July 30, 2007.
Drivers Management paid Manchester benefits from January 8, 2006, until her termination of employment on February 6. Drivers Management contended that it did not owe Manchester benefits from February 7 through August 18, the date of her shoulder surgery, because if Manchester's employment had not been terminated, she could have engaged in light-duty work.
The trial judge awarded Manchester TTD benefits for the period of January 8, 2006, through July 30, 2007. In its award, the trial judge concluded that Manchester was not prohibited from the receipt of workers' compensation benefits simply because she had previously been found by the Social Security Administration to be totally disabled and was receiving Social Security benefits. The court reasoned that Manchester had an earning capacity that she could lose and was, therefore, entitled to workers' compensation benefits. Further, the trial judge found that there was a causal link between the accident and Manchester's psychological injuries. The trial judge awarded Manchester TTD benefits of $544.76 per week beginning on January 8, 2006, and ending July 30, 2007. The trial judge found that Manchester was not totally disabled and did not award permanent benefits. The court did award Manchester $299.44 per week for a 55-percent loss of earning capacity beginning July 31, 2007.
The trial judge also awarded Manchester waiting-time penalties and attorney fees because of Drivers Management's failure to pay Manchester benefits from February 7 through August 18, 2006. The trial judge stated:
If an employer is entitled to a credit against any workers' compensation benefits for payments it would have made to the employee had the employee not been fired, most, if not all employers would fire employees as soon as they suffered an injury in an accident arising out of and in the course of their employment. Such conduct is not acceptable. In this case, as in most cases, the employer has a choice. That choice is to put the employee to work in a light duty position or pay workers' compensation benefits. Termination is not an option.
Drivers Management appealed to the review panel. The review panel affirmed in part and reversed in part. The review panel affirmed the trial judge's determination that there was a causal link between the accident and Manchester's psychological injuries, stating that it was satisfied that the trial judge had a sufficient basis in fact to substantiate, or otherwise justify, the decision reached on causation.
The review panel also affirmed the trial judge's decision that Manchester was not prohibited from receiving benefits simply because she had previously been found totally disabled by the Social Security Administration. The review panel noted that Manchester was gainfully employed at the time of the accident, and it reasoned that she had an earning capacity to lose and that but for the accident, Manchester would likely have been released from her eligibility for Social Security disability benefits through the "Ticket to Work" program.
The review panel reversed the trial judge's award of penalties, interest, and attorney fees. In reviewing the trial judge's award, the review panel observed that the trial judge had concluded that any termination of employment following an *185 accident represented "`conduct [that was] not acceptable'" and triggered penalties against the employer. On appeal, the review panel concluded that this statement of law was contrary to the decision of this court in Guico v. Excel Corp., 260 Neb. 712, 619 N.W.2d 470 (2000), in which we stated that the issue of whether to terminate an individual's employment for his or her behavior should be resolved on a case-by-case basis. The review panel determined that the award of penalties by the trial judge based solely on termination of Manchester's employment was premised on a misstatement of the law. Further, the review panel determined that there was a reasonable controversy as to Manchester's right to benefits "owing to her actions leading to the subject accident." The review panel reversed the award of penalties, interest, and attorney fees. Manchester appeals, and Drivers Management cross-appeals.

ASSIGNMENTS OF ERROR
On appeal, Manchester claims that the review panel erred as a matter of law in reversing the trial judge's award of penalties, interest, and attorney fees.
On cross-appeal, Drivers Management claims that the Nebraska Workers' Compensation Court erred by (1) awarding Manchester TTD benefits after the Social Security Administration had found her to be totally disabled; (2) finding that Manchester's depression was causally related to the accident and resulted in injuries suffered on January 8, 2006; (3) awarding Manchester TTD benefits from January 8, 2006, through July 30, 2007, because she was able to obtain light-duty work and attend school; and (4) ordering Drivers Management to pay Columbus Psychological Associates $6,780.

STANDARDS OF REVIEW
Under Neb.Rev.Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Obermiller v. Peak Interest, 277 Neb. 656, 764 N.W.2d 410 (2009).
On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. Murphy v. City of Grand Island, 274 Neb. 670, 742 N.W.2d 506 (2007). If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. Frauendorfer v. Lindsay Mfg. Co., 263 Neb. 237, 639 N.W.2d 125 (2002).

ANALYSIS
In view of the manner in which the parties have framed the issues, we will first address the issues raised in Drivers Management's cross-appeal and thereafter consider the merits of the appeal.

Cross-Appeal: Manchester's Receipt of Social Security Disability Payments Did Not Preclude Her From Recovering Workers' Compensation Benefits.
Drivers Management argues on cross-appeal, as it did before the trial judge and the review panel, that because Manchester was previously determined by the Social Security Administration to be totally disabled, she had no earning capacity *186 to lose and was therefore ineligible to receive workers' compensation benefits as a result of the January 8, 2006, accident.
In support of this argument, Drivers Management relies on Neneman v. Falstaff Brewing Corp., 237 Neb. 421, 466 N.W.2d 97 (1991). The trial judge and the review panel in the instant case found that Neneman was distinguishable and rejected this argument. We agree that Neneman is distinguishable.
In Neneman, the employee became totally disabled for Social Security purposes based on osteomyelitis in his right ankle, a non-work-related injury. After becoming totally disabled for Social Security purposes based on this non-work-related injury, the employee discovered that he had developed asbestosis due to his former employment. At the time of discovering this work-related injury, the employee had already stopped working and was receiving full disability benefits due to his osteomyelitis, and he therefore was deemed ineligible to receive workers' compensation benefits.
The trial judge and review panel herein distinguished Neneman from Manchester's case, noting that at the time the employee in Neneman discovered his asbestosis, he had no earning power, whereas at the time of Manchester's accident, she was in the labor force and actually working her way off of Social Security disability. The trial judge concluded that Manchester's ability to drive a truck and earn wages for Drivers Management "shows that she had an earning power which could be reduced as a result of the accident of January 8, 2006." The review panel agreed with this determination as well as the conclusion of the trial judge to the effect that the receipt of Social Security benefits does not disqualify an employee from receiving a workers' compensation award.
We agree that Neneman is distinguishable from the facts of this case and further conclude that the trial judge and the review panel were correct in concluding that because Manchester had an earning power to lose, her receipt of Social Security benefits based on an earlier determination of total disability did not prevent her from recovering workers' compensation benefits. Our conclusion is consistent with the weight of authority in this area.
Courts have considered the issue of whether an individual who had previously been determined to be totally disabled for Social Security purposes, but who thereafter resumed gainful employment that resulted in an injury, is precluded from receiving workers' compensation benefits for loss of earning capacity arising out of the work-related injury. The courts have generally concluded that such an individual may receive workers' compensation benefits. See Wal-Mart Stores, Inc. v. Bratton, 678 So.2d 1071 (Ala.Civ.App. 1995), reversed on other grounds, Ex Parte Bratton, 678 So.2d 1079 (Ala.1996). See, also, Francis Powell Enterprises, Inc. v. Andrews, No. 2070907, 2009 WL 1099715 (Ala.Civ.App. Apr.21, 2009). See, similarly, Walls v. Hodo Chevrolet Company, Inc., 302 So.2d 862 (Miss.1974); Reed v. Young, 196 N.E.2d 350 (Ohio 1963). It has been stated, for example, that "[t]he fact that an individual has once received Social Security disability benefits does not make that individual forever ineligible for [workers'] compensation disability benefits, in the event the individual recovers to the point that he or she is able to resume gainful employment." Wal-Mart Stores, Inc., 678 So.2d at 1076.
Indeed, the provisions of the Social Security Act anticipate the instance where an individual receives both Social Security and workers' compensation benefits. By its terms, the act has ensured that an *187 employee will not recover a windfall, by statutorily providing for an offset from the individual's Social Security payments. See 42 U.S.C. § 424a (2006) (reducing computation of Social Security benefits if employee receives workers' compensation benefits). Moreover, the existence of the Social Security rehabilitative programs indicates that an individual once assessed by the Social Security Administration to be totally disabled is not expected to be forever unable to work. See 42 U.S.C. § 422 (2006).
In this case, Manchester was involved in the Social Security "Ticket to Work" program and was working her way off Social Security disability. Because Manchester was able to resume gainful employment and had worked for Drivers Management for 13 months before the accident, the Social Security Administration's determination that at one point in time she was totally disabled does not logically prevent her from later recovering workers' compensation benefits for her loss of earning capacity due to a disability incurred in the course of her employment. Therefore, we reject Drivers Management's argument and affirm the decision of the review panel on this issue.

There Was Sufficient Proof in the Record of Causation Between the Accident and the Recurrence of Manchester's Depression and Agoraphobia.
We next address Drivers Management's argument on cross-appeal that the Workers' Compensation Court erred in finding that there was sufficient evidence in the record to conclude that the recurrence of Manchester's depression and agoraphobia was causally related to the accident and her subsequent injuries. Specifically, Drivers Management argues that the causation opinion of Guinane was insufficient to establish the necessary causal link between the accident and Manchester's depression and agoraphobia. Drivers Management claims that the majority of the evidence in the record shows that Manchester's depression and agoraphobia may have worsened after the accident, but that this was due to family problems and other stressors.
The review panel affirmed the decision of the trial judge to the effect that there was a causal link between the accident and Manchester's psychological issues. After reviewing Guinane's opinion in its entirety, the review panel concluded that the trial judge had a sufficient basis in fact to "substantiate or, otherwise, justify the conclusion he reached on causation."
It is well settled in Nebraska workers' compensation law that a worker is entitled to recover compensation for a mental illness if it is a proximate result of the worker's injury and results in disability. Sweeney v. Kerstens & Lee, Inc., 268 Neb. 752, 688 N.W.2d 350 (2004); Kraft v. Paul Reed Constr. & Supply, 239 Neb. 257, 475 N.W.2d 513 (1991).
In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. Sweeney, supra. A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred. Id.
Further, a preexisting disease and an aggravation of that disease may combine to produce a compensable injury. Miller v. Goodyear Tire & Rubber Co., 239 Neb. 1014, 480 N.W.2d 162 (1992). This court has expressly disapproved of a heightened standard of proof when a *188 preexisting disease or condition was involved, stating: "`[A] workers' compensation claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition no disability would have resulted....'" Id. at 1020, 480 N.W.2d at 167 (quoting Heiliger v. Walters & Heiliger Electric, Inc., 236 Neb. 459, 461 N.W.2d 565 (1990)).
Drivers Management argues that the instant case is similar to Sweeney, where this court concluded that an employee had not established the requisite causal link between the employee's mental health issues and his physical pain. In Sweeney, the expert opinion relied on for causation stated that the employee's depression was entirely attributable to the loss of earning capacity report that the employee believed would have a negative impact on the compensation litigation. The expert testified that in his opinion, the depression was triggered by the employee's unhappiness with a court ruling. Id. The court in Sweeney distinguished that case from Kraft, supra, where the expert testified that a worker's neurosis was attributed to both his physical injury and the psychological loss resulting from the worker's immobility and inability to work and was therefore compensable.
The causation opinion upon which the Workers' Compensation Court relied in this case was that of Guinane, which stated: "It is my professional opinion that [Manchester's] depressive and anxiety related symptoms were substantially caused (mainly depressive symptoms) and significantly exacerbated (panic disorder with agoraphobia) subsequent to the physical injuries, as well as her unexpected and perceived unfair dismissal from her previous place of employment." Guinane also opined that Manchester's psychological condition combined with her physical injuries to render her disabled from working. Guinane expressly stated that Manchester's depression and anxiety were reactivated by her accident and subsequent release from her employment. Importantly, Guinane further concluded that Manchester had not reached maximum medical improvement in her psychological functioning because of her constant physical pain related to her work injury.
On appellate review, the findings of the Workers' Compensation Court will not be reversed unless clearly wrong. We will affirm the order of the Workers' Compensation Court unless there is insufficient evidence in the record to support its decision. Here, based on the reports of Guinane, there was sufficient evidence to support the conclusion that Manchester's depression and agoraphobia were caused and exacerbated by her accident. Guinane expressly stated that Manchester's depression and anxiety were reactivated by the accident and her mental health conditions were related to the physical pain she suffered from the accident. In addition to the reports of Guinane, it is notable that Manchester had not sought psychological help while employed with Drivers Management until after her accident.
Based on the record in this case, we reject Drivers Management's argument, and we affirm the decision of the review panel on this issue.

The Award of TTD Benefits Was Not Error.
Drivers Management next argues on cross-appeal that the Workers' Compensation Court erred in awarding Manchester TTD benefits for the period of February 3 through August 17, 2006, and January 2007 through July 30, 2007. Drivers Management argues that because *189 Manchester was released to light-duty work during the time period of February 3 through August 17, 2006, and Drivers Management would have had light-duty work available for her if her employment had not been terminated, the award of benefits was error. Drivers Management also argues that because Manchester attended college courses after January 2007, she was not eligible for benefits. Manchester responds and claims that the evidence was sufficient to support the award of TTD.
Compensability under the Nebraska Workers' Compensation Act is determined by Neb.Rev.Stat. § 48-101 (Reissue 2004), which provides:
When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.
For the sake of completeness, we interject here that there is some suggestion by Drivers Management in this appeal that Manchester was willfully negligent, and her employment terminated therefor, thereby precluding an award of workers' compensation benefits. See id. The evidence does not support a finding of willful negligence related to Manchester's January 8, 2006, accident wherein she slid off the icy roadway. See Guico v. Excel Corp., 260 Neb. 712, 619 N.W.2d 470 (2000). Indeed, the jurisprudence in this area indicates, albeit fact specific, that a finding of willful negligence associated with driving accidents is rare. See 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 34.02 (2009). See, also, Dept. of Public Safety v. Collins, 140 Ga.App. 884, 232 S.E.2d 160 (1977); Buzzo v. Woolridge Trucking, Inc., 17 Va.App. 327, 437 S.E.2d 205 (1993).
Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact. See Kaufman v. Control Data, 237 Neb. 224, 465 N.W.2d 727 (1991). In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. See Hagelstein v. Swift-Eckrich, 261 Neb. 305, 622 N.W.2d 663 (2001). Moreover, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. Frauendorfer v. Lindsay Mfg. Co., 263 Neb. 237, 639 N.W.2d 125 (2002).
In this case, the trial judge determined that Manchester was temporarily totally disabled. In response to Drivers Management's contention that Manchester could work a light-duty job, the trial judge stated that "[i]t is unreasonable to believe that a person who has a pending workers' compensation claim for a shoulder and neck injury would be able to find employment." The review panel affirmed this decision.
The record supports the trial judge's finding that Manchester was temporarily totally disabled. On February 3, 2006, after Manchester was diagnosed with shoulder strain, cervical strain, and lumbar strain it was noted by the doctor that Manchester could return to work with restrictions of no repetitive lifting over 20 pounds, no pushing or pulling over 20 pounds of force, and limited use of the left arm. However, Manchester testified that she was totally disabled and unable to work from the date of the accident through the date of her shoulder surgery on August *190 18. A trial judge can rely on a claimant's testimony regarding his or her own limitations to determine the extent of the claimant's disability. See Luehring v. Tibbs Constr. Co., 235 Neb. 883, 457 N.W.2d 815 (1990).
In addition to Manchester's testimony, a functional capacity evaluation dated March 26, 2007, stated that Manchester was unable to return to full-time driving. Further, during the time period of January 8, 2006, through July 30, 2007, there were various doctor reports limiting Manchester's ability to work. Guinane stated in a letter dated December 5, 2006, that Manchester's psychological injuries combined with her physical pain had rendered her disabled to work up to that time and that the incapacitation would remain until the source of her pain was significantly reduced "and she ha[d] gained significant improvement in her psychological functioning."
While there was evidence in the record that Manchester attended college classes in January 2007, this was at the recommendation of her therapist in an effort to help Manchester's agoraphobia. Indeed, the record shows that Manchester had to discontinue her classwork due to her ongoing mental health problems.
On an issue of fact, this court will not substitute its judgment for that of the trial judge. Rather, we take every inference in favor of the successful party. Doing so here, we determine that on this record there was sufficient evidence to support the trial judge's finding that Manchester was entitled to TTD benefits beginning January 8, 2006, and ending July 30, 2007, and we affirm the decision of the review panel which affirmed this finding. It is of note that the review panel corrected the ruling of the trial judge and altered the last date that Manchester could receive TTD benefits from July 30 to July 29, 2007, because July 30 was the date of maximum medical improvement. To the extent that Drivers Management's cross-appeal complains in its assignments of error of an award covering July 30, this claim has been resolved in its favor and we affirm. We reject Drivers Management's argument regarding the award of TTD benefits.

The Payment of Fees to Columbus Psychological Associates Was Not Error.
Drivers Management claims on cross-appeal that the Workers' Compensation Court erred in awarding fees to Columbus Psychological Associates for Manchester's treatment for her agoraphobia and depression.
Neb.Rev.Stat. § 48-120(1)(a) (Cum. Supp.2006) states that "[t]he employer is liable for all reasonable medical, surgical, and hospital services ... subject to the approval of and regulation by the Nebraska Workers' Compensation Court, not to exceed the regular charge made for such service in similar cases."
As discussed earlier in this opinion, Manchester's depression and agoraphobia were causally related to her accident, and therefore, payment to Guinane for treatment is proper. We have previously stated that mental health care charges are contemplated by the Nebraska Workers' Compensation Act. See Canas v. Maryland Cas. Co., 236 Neb. 164, 459 N.W.2d 533 (1990). We reject Drivers Management's argument and affirm the decision of the Workers' Compensation Court.

Appeal: The Review Panel Erred When It Reversed the Award of Penalties, Interest, and Attorney Fees.
Manchester claims on appeal that the review panel erred in reversing the trial judge's award of waiting-time penalties, interest, and attorney fees based on Drivers Management's failure to pay benefits *191 from February 7 through August 18, 2006. Because there was no real controversy, we agree with Manchester that the trial judge's award of penalties, interest, and attorney fees was warranted, and we reverse the decision of the review panel in this regard.
Neb.Rev.Stat. § 48-125 (Cum.Supp. 2008) requires an employer to pay the 50-percent waiting-time penalty in the following circumstances: if (1) the employer fails to pay compensation within 30 days of the employee's notice of a disability and (2) no reasonable controversy existed regarding the employee's claim for benefits. Lagemann v. Nebraska Methodist Hosp., 277 Neb. 335, 762 N.W.2d 51 (2009).
A reasonable controversy may exist (1) if there is a question of law previously unanswered by the appellate courts, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. See Guico v. Excel Corp., 260 Neb. 712, 619 N.W.2d 470 (2000). Whether a reasonable controversy exists under § 48-125 is a question of fact. Id.
In this case, the review panel reversed the trial judge's award of penalties, interest, and attorney fees. The review panel determined that there was a reasonable factual controversy whether Manchester was owed temporary benefits after being terminated from her employment at Drivers Management, where she could have been offered light-duty work but for the fact that she was fired from her position owing to her actions leading to the accident at issue. Referring to the record, the review panel noted that Manchester was cited for speeding, and an employee of Drivers Management testified that if Manchester had not been terminated from her employment, Drivers Management would have had light-duty work available for her.
As previously stated in this opinion, compensability under the Nebraska Workers' Compensation Act is determined by § 48-101, which provides:
When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

(Emphasis supplied.)
In this case, the record shows that Manchester was injured as a result of the January 8, 2006, accident and that due to the injuries Manchester sustained, she was unable to work. Although Drivers Management suggests on appeal that Manchester was willfully negligent, it did not allege or prove that the accident was the result of willful negligence. Ordinary negligence is not a defense to a workers' compensation action, Neb.Rev.Stat. § 48-102 (Reissue 2004), and Manchester's entitlement to benefits was not meaningfully at issue.
Further, in Guico, we explained that
"[t]he fact that an employer has terminated the employment of an employee, whose ability to perform the work for which he is fitted has been restricted due to an injury arising out of and in the course of his employment, does not destroy the right of the employee to compensation for the injury."
260 Neb. at 723, 619 N.W.2d at 479 (quoting Aldrich v. ASARCO, Inc., 221 Neb. 126, 375 N.W.2d 150 (1985)). This was the *192 law at the time of Manchester's accident. The law and the record in this case support the trial judge's determination that there was no reasonable controversy whether Manchester was entitled to temporary benefits. We therefore reverse the review panel's reversal of the trial judge's award of waiting-time penalties, interest, and attorney fees and reinstate the trial judge's award.

CONCLUSION
With respect to the cross-appeal, we conclude that the Social Security Administration's prior determination of total disability did not preclude Manchester from receiving workers' compensation benefits for her work-related injury. Further, there was sufficient evidence in the record to support the Workers' Compensation Court's decision that there was a causal link between Manchester's accident and her depression and agoraphobia. The award of TTD benefits for the period of January 8, 2006, through July 29, 2007, was not clearly wrong.
With respect to the appeal, we conclude that there was no reasonable controversy whether Manchester was entitled to benefits for the period of February 7 through August 18, 2006, and conclude that the review panel erred when it reversed the award of waiting-time penalties, interest, and attorney fees and we, therefore, reverse the review panel in this regard and order the reinstatement of the trial judge's award.
AFFIRMED IN PART, AND IN PART REVERSED WITH DIRECTIONS.