IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


EVENSEN V. GEORGE RISK INDUS.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ROBERT EVENSEN, APPELLEE,

V.

GEORGE RISK INDUSTRIES, INC., AND TRAVELERS CASUALTY
INSURANCE COMPANY OF AMERICA, APPELLANTS.


Filed January 27, 2015.    No. A-14-601.


Appeal from the Workers' Compensation Court: MICHAEL K. HIGH, Judge. Affirmed in part, and in part reversed.

James D. Garriott, of Cassem, Tierney, Adams, Gotch & Douglas, for appellants.

John K. Sorensen, of Sorensen, Hahn & Morgan, P.C., for appellee.


MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

MOORE, Chief Judge.

INTRODUCTION

George Risk Industries, Inc. and Travelers Casualty Insurance Company of America (the Appellants) appeal from an award of benefits to Robert Evensen entered by the Nebraska Workers' Compensation Court. The Appellants assert that the compensation court failed to provide sufficient credit for indemnity benefits they paid and erred in awarding a waiting time penalty under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2012) for failure to pay benefits. We find the Appellants were given the appropriate credit for their previous indemnity payments. However, we find clear error in the award of a waiting time penalty. Thus, we affirm in part, and in part reverse.


- 1 -

BACKGROUND

Evensen began working for George Risk Industries in 1980 in the maintenance department and after two or three years, he became an assistant toolmaker, making injection molds. On November 8, 2007, Evensen sustained a work-related injury to his back. Evensen received medical treatment, but he continued to work until January 7, 2008 when he sustained a work-related injury to his neck and upper back and aggravated his lower back injury. Evensen was off work until March 2, 2009, when he returned to part-time, light duty work. On June 12, he stopped work due to increased pain. Evensen continued to require ongoing medical treatment after the January 2008 injury and was still receiving medical treatment at the time of trial.

One of Evensen's doctors referred him for a Functional Capacity Evaluation (FCE), which was conducted on several dates between October and December 2009. The FCE showed that Evensen could work at the light physical demand level for activity from above the waist to shoulder height and at the medium light physical demand level for activity from below the waist to the knee. The FCE showed that he should avoid overhead lifting, reaching, and lifting from the floor level.

On February 13, 2010, Dr. Michael Blei examined Evensen for the Appellants and concluded that Evensen had sustained an 8-percent whole person impairment. Blei agreed that the work restrictions set forth in the FCE were appropriate. Blei concurred with the determination of Evensen's treating physician that Evensen had reached maximum medical improvement (MMI) by September 22, 2009.

Lisa Porter, a court-appointed vocational counselor, completed a loss of earning capacity evaluation of Evensen. Porter submitted an initial report, dated July 30, 2012, and completed her assessment on September 24. In her September report, Porter concluded that Evensen had sustained a l00-percent loss of earning capacity as a result of his work-related injuries.

Trial was held before the compensation court on October 17, 2012 and was continued to December 5 to allow for preparation and receipt of a rebuttal loss of earning capacity report. During the December hearing, the court received a rebuttal loss of earning capacity report prepared by Ronald Schmidt. Schmidt's report was dated November 20. Schmidt concluded that Evensen had lost between 40- and 50-percent of his earning capacity as a result of his work-related injuries. The court also received a surrebuttal report prepared by Porter. Porter addressed some concerns raised in Schmidt's report and again concluded that Evensen had sustained a 100-percent loss of earning capacity.

On June 3, 2014, the compensation court entered an award of benefits to Evensen. The court noted that Evensen made no claim for unpaid or underpaid indemnity benefits through June 12, 2009. The court determined that when Evensen ceased work on June 12, his condition was stabilized and that his date of MMI was June 13. The court further determined that Evensen was permanently and totally disabled from and after June 13 and ordered the Appellants to pay permanent total disability benefits starting June 13 for as long as Evensen remained permanently and totally disabled. The court determined that Evensen had sustained a 100-percent loss of earning capacity. In addressing Evensen's claim for penalties for the balance of unpaid indemnity, the court stated:

Evensen makes a claim for penalties for indemnity benefits remaining unpaid as of the time of trial which were over and above the payments made on the basis of the 8 percent impairment rating given by [Blei]. There is merit to this position at least up to the 40 percent loss of earning power rating provided by [Schmidt]. An Impairment rating does not equate to a loss of earning power. There may have been an overpayment of certain benefits in the case but the calculations for the period of time from June 12, 2009, through the initial trial date in this case of October 17, 2012, show that for that period of time there was no controversy that [Evensen] was entitled to at least a 40 percent loss of earning power payment."

The court calculated, based on 40-percent of the benefits to which Evensen was entitled during that period, that there was no dispute that the Appellants owed at least $36,957.32. The court calculated that from June 13, 2009 through October 17, 2012, the first trial date, the Appellants paid permanent partial disability payments totaling $13,097.67 based on Blei's 8-percent impairment rating. The court determined that the Appellants had underpaid indemnity benefits during this period by $23,859.65, but it credited them with the $13,097.67 they did pay. The court assessed a 50-percent waiting time penalty of $11,929.83 on the underpaid amount. The court ordered the Appellants to pay certain unpaid medical bills, expenses, and lost salary Evensen's wife sustained because she was required to drive him to and from certain medical appointments.

## ASSIGNMENTS OF ERROR

The Appellants assert that the compensation court erred in (1) providing them with credit only for indemnity paid through June 12, 2009 and not for benefits paid after that date and (2) in awarding a 50-percent waiting time penalty of $11,929.83 under § 48-125 for failing to pay benefits based on a report that had not been received or even prepared at the time of trial.

## STANDARD OF REVIEW

The judgment made by the compensation court shall have the same force and effect as a jury verdict in a civil case. *Clark v. Alegent Health Nebraska*, 285 Neb. 60, 825 N.W.2d 195 (2013). A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Id.*

On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Clark v. Alegent Health, supra.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

ANALYSIS

*Credit for Indemnity Paid.*

The Appellants assert that the compensation court erred in providing them with credit only for indemnity paid through June 12, 2009 and not for benefits paid after that date. Their argument is based on an incorrect reading of the compensation court's award. On the final page of the award, the court stated, "[Appellants] are entitled to a credit for payment to [Evensen] of indemnity benefits actually paid up through June 12, 2009, and as more specifically set forth above." As we have already noted, in the analysis portion of the court's award, it determined that from June 13, 2009 through October 17, 2012, the Appellants owed indemnity benefits of at least $36,957.32. The court calculated that from June 13, 2009, through October 17, 2012, the first trial date, the Appellants paid permanent partial disability payments totaling $13,097.67 based on Blei's impairment rating. The court determined that the Appellants had underpaid indemnity benefits during this period by $23,859.65, but it credited them with the $13,097.67 they did pay. This assignment of error is without merit.

*Waiting Time Penalty.*

The Appellants assert that the compensation court erred in awarding a 50-percent waiting time penalty of $11,929.83 under § 48-125 for failing to pay benefits based on a report that had not been received or even prepared at the time of trial. Specifically, the Appellants argue that the court incorrectly based its award of waiting time penalties on Schmidt's November 20, 2012 loss of earning capacity report.

Section 48-125 requires an employer to pay the 50-percent waiting-time penalty in the following circumstances: if (1) the employer fails to pay compensation within 30 days of the employee's notice of a disability and (2) no reasonable controversy existed regarding the employee's claim for benefits. *Manchester v. Drivers Mgmt.,* 278 Neb. 776, 775 N.W.2d 179 (2009). A reasonable controversy may exist (1) if there is a question of law previously unanswered by the appellate courts, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *Id.* Whether a reasonable controversy exists under § 48-125 is a question of fact. *Id.* To avoid the penalty provided for in § 48-125, an employer need not prevail in the employee's claim-it simply must have an actual basis in law or fact for disputing the claim and refusing compensation. *Stacy v. Great Lakes Agri Marketing, Inc.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

The Appellants paid permanent disability benefits based upon Blei's 8-percent impairment rating from June 13, 2009 to the first trial date on October 17, 2012. There is no evidence in the record that any other impairment rating, or loss of earning capacity opinion, was completed until September 24, 2012. Further, there is no evidence in the record that the Appellants possessed Porter's report for more than 30 days as of October 17. Trial was continued to December 5, and on that date, the court received Schmidt's November 20 report into evidence.

The Appellants argue further that there is no evidence that they possessed Schmidt's report for more than 30 days as of either trial date. Evensen argues that the trial court correctly assessed waiting time penalties because there was evidence in the record that would have supported a finding of total permanent disability even if no loss of earning power reports had been completed. The question is not, however, whether the court correctly determined that Evensen was totally and permanently disabled. The question is whether there was a reasonable controversy as to Evensen's loss of earning capacity above the 8-percent paid by the Appellants and whether the trial court erred in basing its finding of no reasonable controversy as to at least a 40-percent loss on Schmidt's report.

We find that the compensation court clearly erred in basing its award of waiting time penalties on the 40-percent loss of earning capacity set forth in Schmidt's November 20, 2012 report. While there may have been evidence to support a finding of total disability prior to the formal reports prepared in 2012 as argued by Evensen, the trial court obviously relied upon the reports both in determining the extent of Evensen's earning capacity and in its determination that no reasonable controversy existed. There is no evidence that either loss of earning report was received more than 30 days before the commencement of trial. Porter's September 24, 2012 report showing a 100-percent loss of earning capacity was received into evidence on the first trial date of October 17, less than 30 days later. At the close of evidence on October 17, trial was continued so that the Appellants could obtain a rebuttal loss of earning power report. Thus, as of October 17, there was still a reasonable controversy as to the degree of Evensen's loss of earning capacity. The Appellants offered Schmidt's rebuttal report, dated November 20, at the continued trial on December 5. At that point, there was no longer a reasonable controversy at least to a 40-percent loss of earning capacity. However, the trial court awarded the waiting time penalty from June 13, 2009 to October 17, 2012, a period ending more than a month prior to the date of Schmidt's report. It was clear error for the trial court to base its award of waiting time penalties for this period on the loss of earning capacity set forth in Schmidt's November 20, 2012 report, and we reverse that portion of the award. We further observe that less than 30 days had elapsed from the time of Schmidt's report to the second trial date on December 5. There was no additional evidence offered or received on that date about payments made by the Appellants. Accordingly, any award of waiting time penalties as of December 5 based on Schmidt's report would have been premature as well.

## CONCLUSION

The compensation court correctly credited the Appellants for indemnity benefits paid from Evensen's date of MMI through the first trial date. The court erred in awarding waiting time penalties based on Schmidt's loss of earning capacity report, and we reverse that portion of the award.

AFFIRMED IN PART, AND IN PART REVERSED.