IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


CLOUSE V. NORTHWESTERN CORP.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ANDREW CLOUSE, APPELLANT,

V.

NORTHWESTERN CORPORATION AND OLD REPUBLIC INSURANCE COMPANY, INC., APPELLEES.


Filed February 2, 2016.    No. A-15-501.


Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Rolf Edward Shasteen, of Shasteen & Morris, P.C., L.L.O., for appellant.

David A. Dudley and Thomas B. Shires, of Baylor, Evnen, Curtiss, Grimit, & Witt, L.L.P., for appellees.


IRWIN, PIRTLE, and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Andrew Clouse (Clouse) appeals from an award of the Workers' Compensation Court determining he was not entitled to additional benefits from Northwestern Corporation and Old Republic Insurance Company, Inc., (collectively Northwestern Corporation). On appeal, Clouse argues that the compensation court improperly determined his back pain did not arise out of and in the course of employment. We find no merit to Clouse's arguments on appeal and therefore affirm.

## II. BACKGROUND

In July 2013, Clouse filed a petition in the Workers' Compensation Court seeking compensation from Northwestern Corporation for lower back pain. Clouse argued his current back pain was causally related to a prior back injury he had sustained while working for Northwestern

Corporation. The previous injury had occurred on July 16, 2011, when Clouse was digging a hole while at work. Northwestern Corporation had accepted the compensability of Clouse's 2011 back injury and had paid various workers' compensation benefits to Clouse. Clouse returned to work with no restrictions in January 2012. Following his recovery from the July 2011 injury, Clouse was able to work without restrictions until May 2013 when Clouse again began to experience lower back pain. There was no specific incident, work-related or otherwise, that triggered Clouse's 2013 back pain.

Northwestern Corporation answered Clouse's petition for workers' compensation benefits, arguing that it had already compensated Clouse for the 2011 back injury and that the current back problems Clouse suffered had not arisen out of and in the course of his employment. A hearing on Clouse's petition was held on April 9, 2015.

At the hearing, the parties introduced various medical records and reports as exhibits. The records reveal that Clouse first saw his general practitioner for back pain in May 2007, although he also reported previously injuring his back at age 19. Throughout 2010 and early 2011, Clouse saw chiropractors for lower back pain. In March 2011, Dr. Douglas Beard diagnosed Clouse with lumbar spinal stenosis at L4-5, secondary to degenerative disc disease. In April 2011, Dr. Beard performed a decompressive lumbar semihemilaminotomy at L4-5 on Clouse. Dr. Beard stated that the surgery was "not a fix but simply a treatment." Particularly, Dr. Beard noted that "in the future, [Clouse] certainly could require an arthrodesis or an arthroplasty particularly given his young age." Dr. Beard released Clouse back to work in June 2011.

On July 17, 2011, Clouse returned to his general practitioner with complaints of back pain, citing the July 16 work injury for which Northwestern Corporation eventually accepted compensability. On August 10, Dr. Beard performed a revision type decompressive lumbar semihemilaminotomy on Clouse. Clouse continued to see Dr. Beard during his post-surgery recovery. Dr. Beard released Clouse to full work duty with no restrictions on January 11, 2012, approximately six months after the work-related injury. Clouse reported that he had minimal to no pain at the time he returned to work and at a follow-up appointment in September 2012.

Clouse continued to work for Northwestern Corporation, apparently without pain, until May 2013 when he reported experiencing numbness and tingling in his right leg. The pain eventually progressed into his lower back and left buttock. On June 28, 2013, Dr. Beard diagnosed Clouse with new extrusion of disc material migrating towards the right at the previous site of disc herniation and recommended a lumbar arthroplasty at the L4-5 level. Dr. Beard opined that because there was no new causation event, he believed Clouse's current pain "emanates from his original injury." However, Dr. Beard did not specify if "original injury" referred to the 2011 work injury for which he treated Clouse or to one of the earlier back problems for which Clouse sought treatment from chiropractors and his general practitioner. Later, Dr. Beard clarified that he believed Clouse's current back injury was partially work-related, though he did not believe the work injury was the major cause:

> I believe Mr. Clouse has had a rather longstanding history of degenerative disc disease which predates the recurrent disc herniation. . . . [I]t is my opinion that though the work related incident does in fact contribute to his difficulties, it very likely was not a major culprit in his overall predicament and status.

The exhibits also contained the opinion of Dr. Sunil Bansal. Dr. Bansal reviewed Clouse's medical records but did not treat him in person. Dr. Bansal believed that Clouse's current back problems were work-related, stating, "[I]t is quite clear from pathophysiologic and mechanistic standpoints that the work Mr. Clouse performed cumulatively at Northwestern [Corporation] was a significant contributing factor to his lumbar degenerative disc disease, including aggravation, worsening, and accelerating thereof."

In contrast to Dr. Bansal's opinion that Clouse's 2013 back problems were work-related, two other doctors opined that Clouse's back pain was the result of non-work-related, preexisting problems and had not arisen out of and in the course of his employment with Northwestern Corporation. Dr. David Benavides saw Clouse in August 2013 in order to give him a second opinion on his back pain. Dr. Benavides initially stated, "[I]t would be reasonable to believe that the patient's ongoing problems emanated more likely than not from the initial injury of July 16, 2011." However, in July 2014, Dr. Benavides modified his opinion in response to unspecified "additional information" he received from Northwestern Corporation. In his updated opinion, Dr. Benavides noted that Clouse "has a history of lumbar issues . . . dating back to 2007." Dr. Benavides also noted that Clouse had returned to work with no restrictions after recovering from the 2011 work injury. Dr. Benavides therefore concluded,

> The lack of known or reported injury for the onset of symptoms [in 2013] would strongly suggest and I would be in agreement that they, the symptoms, are related more so to the progressive nature of the degenerative condition of the lumbar spine, in particular the L4-5 level. . . .
>
> . . . [T]he records do confirm that history of lumbar issues prior to July 16, 2011 strongly suggest[s] that there was an underlying pre-existing condition that led to this most recent presentation . . . .

Dr. Benavides also reaffirmed his opinion that Clouse's current back pain was not work-related in a letter dated March 24, 2015. In the letter, Dr. Benavides noted that "if in fact the patient had no prior history, one would certainly attribute the current state to the work injury." Given Clouse's "prolonged history of mechanical lumbar issues predating the work-related injury," however, Dr. Benavides concluded that the degenerative process was the cause of Clouse's current back pain.

The second doctor to opine that Clouse's 2013 back problems did not arise out of and in the course of employment was Dr. Benzel MacMaster. Dr. MacMaster reviewed Clouse's medical history and stated his opinion that "[t]he records provided do not support the conclusion that Mr. Clouse's current condition is related to the July 16, 2011 work incident." Dr. MacMaster noted that the current herniated disc problem was "on the side opposite the disc herniation that occurred as a result of th[e] work injury" and was therefore not likely causally related. Dr. MacMaster stated that Clouse's clear history of "preexistent degenerative disc at the L4-5 level" was the cause of his current back pain.

Clouse was the only witness to testify at the hearing. Clouse testified that he had been employed with Northwestern Corporation since 2005 and that he currently worked as a gas man. Clouse testified that his work involved changing and reading meters, as well as occasional digging. Clouse testified that he injured his back while working for Northwestern Corporation on July 16,

2011, when he was digging down to a leaking pipe. According to Clouse, he was eventually able to return to work with no restrictions after recovering from the 2011 injury. Clouse testified he returned to his doctor with back pain in June 2013, though there was no particular event that caused the pain.

On cross-examination, Clouse admitted that he had suffered from back pain since before the July 2011 work injury. Clouse also testified that at the time of the April 2011 surgery, he knew he had ongoing back problems and was likely to experience back pain for the rest of his life.

The compensation court reviewed the evidence from the hearing and issued an award on May 15, 2015. Pursuant to the parties' stipulation, the court found that Clouse had suffered an injury to his back during the scope of his employment with Northwestern Corporation on July 16, 2011. The compensation court found that Northwestern Corporation had fully compensated Clouse for the July 2011 injury and that Clouse had been able to return to work with no disabilities after reaching maximum medical improvement. Considering Drs. Beard, Benavides, Bansal, and MacMaster's various opinions, the court determined that Clouse's "current low back problems originate from the degenerative process in his lower spine, and are not related to the July 2011 work injury." The court noted that Clouse had suffered from back problems since 2007 and that the pattern of back injuries "shows that plaintiff's low back is deteriorating because of the natural progression of the degenerative process in his low back, not as a result of the continuation of the problems associated with the July 2011 work injury, or his current work activities." The court concluded that because Northwestern Corporation had fully compensated Clouse for the July 2011 work injury and there was not a subsequent work-related injury, Northwestern Corporation owed Clouse no additional benefits.

Clouse appeals from the compensation court's award.

## III. ASSIGNMENTS OF ERROR

Clouse assigns two errors. First, Clouse argues the compensation court erred when it determined that Clouse's 2013 back injury did not arise out of and in the course of his employment at Northwestern Corporation. Second, Clouse argues the compensation court erred in failing to order Northwestern Corporation to pay for arthroplasty surgery as recommended by Dr. Beard.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Stacy v. Great Lakes Agri Mktg., Inc.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

On appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013). If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an

appellate court is precluded from substituting its view of the facts for that of the compensation court. *Manchester v. Drivers Mgmt. LLC*, 278 Neb. 776, 775 N.W.2d 179 (2009).

## 2. COMPENSABILITY OF CLOUSE'S CURRENT BACK PAIN

Clouse asserts that the compensation court erred in determining his 2013 back pain was not work-related. Clouse argues that the medical opinions support a finding that his back injury was related to the 2011 work injury. However, the compensation court chose to give credibility to those medical experts who opined that Clouse's current back problems did not arise out of and in the course of his employment. Accordingly, we find no merit to Clouse's assignment of error.

In a workers' compensation case, the plaintiff must establish by a preponderance of the evidence that the injury for which an award is sought arose out of and in the course of employment. *Owen v. Am. Hydraulics, Inc.*, 258 Neb. 881, 606 N.W.2d 470 (2000).

As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Manchester*, *supra*. When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Damme v. Pike Enters., Inc.*, 289 Neb. 620, 856 N.W.2d 422 (2014).

The various doctors who treated Clouse and reviewed his medical records issued conflicting opinions regarding whether Clouse's 2013 back injury was work-related or not. Dr. Bansal believed that Clouse's work at Northwestern Corporation had aggravated, worsened, and accelerated his lumbar degenerative disc disease. Dr. Beard opined that Clouse's work was a minor contributing factor to his current back problems. However, even before Clouse's 2011 work injury, Dr. Beard had noted that Clouse had ongoing back problems and was likely to require additional treatment in the future. Dr. MacMaster stated his belief that Clouse's condition was unrelated to the 2011 work injury and was solely the result of his preexisting degenerative disc disease. Finally, Dr. Benavides initially stated his belief that Clouse's 2013 back problems were work-related. However, after receiving additional information that is not in the record before us, Dr. Benavides opined that the injury was not, in fact, related to Clouse's work for Northwestern Corporation.

As the trier of fact, the compensation court was the sole judge of the credibility of these witnesses and the weight to be given their statements. See *Manchester*, *supra*. After considering the various doctors' opinions, the court concluded that Clouse's 2013 back pain was not work-related. We find the record supports this conclusion. We acknowledge that Dr. Benavides changed his opinion based, at least in part, on unspecified information not in the record. However, even ignoring Dr. Benavides' opinion, the record contains ample evidence to support the compensation court's determination. Dr. MacMaster opined that Clouse had a history of "preexistent degenerative disc at the L4-5 level" and that this was the cause of his current pain. Dr. MacMaster also noted that Clouse's current herniated disc was on the opposite side of the work injury, indicating the two were not causally linked. Additionally, Dr. Beard stated that Clouse suffered from ongoing back issues as early as April 2011, nearly 3 months before the work injury. Furthermore, the compensation court emphasized the undisputed facts that it found persuasive in reaching its determination: that Clouse's back problems predated the 2011 work injury and that the 2013 back pain was not the result of any specific provoking event.

On appellate review, we do not reweigh these credibility determinations. *Damme*, *supra*. Based upon the record before us, we cannot say that the compensation court was clearly wrong in determining that Clouse's 2013 back pain did not arise out of and in the course of his employment at Northwestern Corporation. See *Visoso*, *supra*. Because Clouse's current back pain was not work-related, it is not a compensable injury. *Owen*, *supra*.

In arguing that the compensation court erred, Clouse urges us to apply the proposition that where a work injury combines with a preexisting injury to produce a disability, it is compensable notwithstanding that in the absence of the preexisting condition, no disability would have resulted. *Heiliger v. Walters & Heiliger Elec., Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). While Clouse correctly states this rule, it has no applicability here. The compensation court found that Clouse's 2013 injury was not a work-related injury, in whole or in part. Rather, the compensation court determined that Clouse's 2013 injury was solely the result of the natural progression of his underlying, non-work-related back condition. Therefore, the rule concerning combined work-related and preexisting injuries is inapposite.

Because we find no error in the compensation court's ruling that Clouse's 2013 back injury was not work-related, we need not address Clouse's additional contention that the court should have ordered Northwestern Corporation to pay for arthroplasty surgery to treat that injury.

## V. CONCLUSION

The Workers' Compensation Court did not err in determining that Clouse's current back pain did not arise out of and in the course of employment. Accordingly, we affirm the compensation court's award.

AFFIRMED.