IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

HORN V. GRA-GAR, LLC

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RALPH HORN, APPELLEE,
V.
GRA-GAR, LLC, APPELLANT.

Filed July 23, 2013.    No. A-12-672.

Appeal from the Workers' Compensation Court: RONALD L. BROWN, Judge. Affirmed.

Bradley D. Shidler, of Werner Enterprises, Inc., and, on brief, Daniel R. Fridrich and Nathan J. Meisgeier for appellant.

Jeffrey F. Putnam, of Law Offices of Jeffrey F. Putnam, P.C., for appellee.

PIRTLE and RIEDMANN, Judges, and MULLEN, District Judge, Retired.

MULLEN, District Judge, Retired.

INTRODUCTION

Gra-Gar, LLC, appeals from a Nebraska Workers' Compensation Court decision awarding Ralph Horn temporary total disability benefits of $432.89 per week from October 26, 2011, for as long as Horn remained totally disabled. Gra-Gar argues that Horn was already totally disabled due to non-work-related medical conditions for which he was receiving Social Security disability benefits and that accordingly, there could be no loss of earning capacity because he had none due to his non-work-related medical conditions. Based on the analysis below, we affirm.

FACTUAL BACKGROUND

The parties agree that Horn suffered a work-related injury on February 19, 2008, when the hood of a work truck fell down on top of him while he was attempting to jump-start the truck's battery. He was prescribed pain medication, muscle relaxants, and injections for his lower back and ultimately required surgery. On August 6, Dr. John Treves performed a

- 1 -

"[d]ecompressive lumbar laminectomy medial facetectomy and foraminotomy at L4, L5 bilaterally" and a "[r]ight lateral L5-S1 discectomy." Up until the time of this surgery, Horn continued to work for Gra-Gar as a "shag driver," which required him to drive trucks a short distance from one worksite to another. On November 13, Dr. Treves concluded that Horn had adequately recovered from his procedure, but still had some left lower extremity radicular pain. Horn was released to return to work with restrictions in the light-medium capacity.

Horn continued to have symptoms of low-back pain after returning to work. On November 25, 2008, Horn received followup care for back pain from Lynn Kocian, a physician's assistant. Horn discontinued working in December 2008 upon Kocian's recommendation, because his symptoms interfered with his ability to do the work. He returned to Dr. Treves on January 8, 2009, with ongoing low-back pain. While off work from December 2008 to June 2009, Horn continued to receive treatment with Kocian for ongoing back and lower extremity symptoms.

Dr. Charles Taylon examined Horn in March 2009 and concluded that regarding his back injury, Horn had attained maximum medical improvement and had incurred a permanent partial whole-body impairment rating of 18 percent. Dr. Taylon recommended that Horn be restricted from lifting more than 25 pounds, be restricted from repetitive bending and twisting, and be limited to driving in the local area with the ability to stop every 1 or 2 hours. Dr. Taylon repeated these opinions in a letter dated May 31, 2009, after reviewing an additional MRI. Horn returned to work in June 2009, but he continued to suffer from low-back pain for the duration of his employment with Gra-Gar.

On July 15, 2009, Horn had an episode of confusion and memory loss while at work and coworkers took him to a hospital. Horn returned to Dr. Treves for treatment and was ultimately diagnosed with a cystic brain mass in August 2009. Horn continued working for Gra-Gar; however, he blacked out while driving at work on August 17. According to Horn, he resigned on September 8, because of the blackout incident, not because of his low-back injury.

On September 17, 2009, Horn returned to Dr. Treves and reported that he was doing well and had not had any further episodes of confusion, but that he had persistent radicular pain in his left leg. Dr. Treves noted that Horn had undergone a driving evaluation and was cleared for personal driving but could not drive commercially, which was the type of driving he was doing as a "shag driver." In November 2009, Horn returned to Dr. Treves for continuing back pain and leg pain with an increase in symptoms that limited his activities.

Horn had applied for Social Security disability benefits in September 2009. The application is in the record before this court, but neither party offered the Social Security determination letter as evidence, which perhaps sets forth the basis for the award of Social Security disability benefits. In the application, Horn stated that a blackout and memory problems caused by a brain tumor had limited his ability to work. He listed on the form that he was receiving treatment from Dr. Treves and Kocian. Horn began receiving Social Security disability benefits in January 2010. Horn testified that he received Social Security disability benefits due to his chronic manic depression and tremors and that it had nothing to do with his back injury. Horn's medical records showed a history of bipolar disorder and depression managed with medication.

A loss of earning capacity evaluation completed on December 18, 2009, assessed Horn with a 45-percent loss of earning capacity. It was based on medical records gathered between February 2008 and March 2009. Horn reported to the evaluator that he would begin receiving Social Security disability benefits in January 2010. The evaluation stated that Horn's work history was in the medium to heavy physical demand category, but his limitations placed him in the light to light-medium physical demand category and would prevent him from returning to all of his previous occupations. Appropriate jobs for Horn to consider without further training included counter sales, customer service clerk, sales agent, security/gate guard, and driver in certain settings.

Horn continued to follow up with Kocian in October 2009 and into early 2010, complaining of back pain. In October 2009, Horn reported that his back pain was severe and that he required a cane for balance. Kocian noted that Horn was not sure whether he could return to any type of work because he was unable to lift, had weakness in his left leg, continued to trip and fall, and could not drive. Kocian noted that Horn could not return to work at that time because the stability of the brain tumor was unknown and because "[b]ack restrictions still apply."

Horn followed up with Dr. Treves from September 2009 to October 2011. Horn consistently complained of low-back pain, which grew worse over time. Dr. Treves examined Horn on November 9 and noted that low-back pain and leg pain were limiting Horn's activities.

Horn returned to Dr. Treves on April 1, 2010, and Dr. Treves recommended another of the foraminotomies or potentially an interbody fusion if Horn's back and leg pain continued to increase. On April 14, Dr. Treves detected a significant degenerative change in Horn's lower back compared to the last examination 2 weeks prior, he noted that Horn's pain lessened when he walked, and he noted that Horn could not sit or drive for any length of time due to back and leg discomfort. On that date, Dr. Treves also noted that Horn's brain tumor was asymptomatic and appeared to be stable and recommended annual followup imaging, but no treatment. Horn's brain tumor remained stable and asymptomatic from the time it was diagnosed.

A functional capacity evaluation was performed on October 28, 2010. Horn demonstrated the ability to work at a light demand level, lifting 16 to 20 pounds or less for up to one-third of the day. The evaluation showed that Horn would benefit from changing positions every 30 minutes. The evaluation recommendation was that Horn was not a good candidate for activities involving frequent forward bending, back lifting, squatting, and constant walking or constant standing. The functional capacity analysis did not rule out full-time employment for Horn.

On January 10, 2011, a revised loss of earning capacity analysis was written using the restrictions set forth in the October 28, 2010, functional capacity evaluation. It determined Horn had incurred an 83-percent loss of access to jobs in the Omaha, Nebraska, labor market area. Appropriate jobs for Horn to consider without further training included cashier in certain settings, security/gate guard, youth transportation driver, and courier. The evaluation opined that Horn would sustain an initial loss of wage of 44 to 56 percent. Horn's loss of earning capacity would be approximately 70 percent.

Following an examination on March 1, 2011, Kocian opined that since Horn's work-related back injury, he could not perform the physical tasks for that employment, such as frequent lifting and walking several miles, "to the degree he did before, if at all." In light of the

functional capacity evaluation, Kocian did not believe Horn could work a 40-hour workweek, definitely not at his previous capacity.

On October 26, 2011, Horn underwent a second low-back surgery, an L4-5, L5-S1 interbody fusion. At a followup appointment on November 18, Dr. Treves advised Horn to avoid employment involving heavy lifting, bending, twisting, or strenuous activity. Horn continued to experience back pain following the surgery, but his symptoms improved.

On February 28, 2012, Dr. Taylon examined Horn again. Dr. Taylon opined that Horn should continue to be restricted to 25 pounds of lifting, avoid bending and twisting, and change positions every hour.

As of April 15, 2012, per Dr. Treves' recommendation, Horn remained "unable to work" until he recovered from the second surgery. Dr. Treves recommended permanent light-duty restrictions after recovery. At that time, Horn was employed on a part-time basis to drive cars occasionally from Valentine, Nebraska, to Chadron, Nebraska. Between January and April 2012, Horn made such trips 10 to 12 times. As of April 19, Horn was taking no medication for back pain except "Advil PM at night." He testified that some days he had no back pain or hip pain.

## PROCEDURAL BACKGROUND

Horn filed petitions in August and September 2011 claiming that he sustained injuries in accidents arising out of and in the course of his employment with Gra-Gar, for which he is entitled to compensation. After a trial on April 19, 2012, the Nebraska Workers' Compensation Court entered an award for Horn. The compensation court found that at the time Horn resigned his employment at Gra-Gar, he still retained earning power, demonstrated by the fact that he had continued employment with Gra-Gar after the injury. The compensation court declined to rely on Horn's own testimony concerning the Social Security disability application process and award:

> Although the application for Social Security disability does not reference his back injury as a medical basis for his claim, such determinations are based on the whole of an applicant's medical conditions/injuries, which affect employability, but neither party offered the Social Security Administration determination letter which sets forth the basis for the award of Social Security disability. I am reluctant to rely on [Horn's] testimony regarding the Social Security disability application process and award as the records from multiple healthcare providers indicate he is an unintentionally incomplete historian. . . . Horn retained reduced earning capacity [that was] lost at least temporarily due to his work-related back injury. The Nebraska Supreme Court has previously addressed the eligibility of an injured employee to receive workers' compensation which offsets Social Security disability. Manchester v. Drivers Mgmt., LLC, 278 Neb. 776, 775 N.W.2d 179 (2009).

The compensation court awarded Horn temporary total disability benefits at $432.89 per week from October 26, 2011, and for as long as Horn remained totally disabled. Gra-Gar timely appeals.

## ASSIGNMENTS OF ERROR

Gra-Gar assigns, restated, that the compensation court erred in (1) finding that Horn was temporarily totally disabled as a result of the work accident starting on October 26, 2011, the

- 4 -

date of his second back surgery, and continuing into the future and (2) awarding Horn temporary total disability benefits starting on October 26, 2011, the date of his second back surgery, and continuing on in the future when Horn was already totally disabled due to non-work-related medical conditions by late 2009 or early 2010.

STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is no sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Wissing v. Walgreen Company*, 20 Neb. App. 332, 823 N.W.2d 710 (2012).

On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Murphy v. City of Grand Island*, 274 Neb. 670, 742 N.W.2d 506 (2007). If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002).

With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Wissing v. Walgreen Company, supra*.

ANALYSIS

Gra-Gar argues that because Horn was not employed and was collecting Social Security disability benefits due to non-work-related conditions at the time of his second back surgery, the compensation court erred in awarding temporary total disability benefits commencing on the date of the second surgery. Gra-Gar claims that the compensation court's award was factually flawed and contrary to Nebraska law.

Gra-Gar asserts that there was no evidence to support the compensation court's conclusion that Horn retained any earning capacity as of the second surgery on October 26, 2011. Further, Gra-Gar asserts there was no testimony from Horn that he was still capable of working as of the date of the second surgery and as evidenced by Horn's receipt of Social Security disability benefits. Moreover, according to Gra-Gar, the compensation court focused on the wrong period of time in concluding that Horn retained some type of earning power, noting that Horn retained earning capacity while he was still working rather than at the time of the second surgery.

The level of a worker's disability depends on the extent of diminished employability or impairment of earning capacity and does not directly correlate to current wages. *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013). The Nebraska Supreme Court has defined temporary disability as the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Id.* Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact. See *Benish Kaufman v. Control Data*, 237 Neb. 224, 465 N.W.2d 727 (1991).

On an issue of fact, this court will not substitute its judgment for that of the trial judge. Rather, we take every inference in favor of the successful party. See *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001).

Our review of the evidence shows that Horn ended his employment with Gra-Gar on September 8, 2009, due to symptoms associated with a brain tumor, not back pain. During the 2 years following Horn's resignation, he continued to suffer low-back pain. However, his brain tumor remained stable and asymptomatic. Prior to the second back surgery, the physical limitations associated with Horn's back injury would not allow him to engage in the type of work he had performed for Gra-Gar. However, the evidence shows that those limitations did not completely disqualify Horn from all employment, although Horn suffered a significant loss of earning capacity and his employment options were greatly limited by the back injury. None of Horn's healthcare providers definitively stated that Horn was unemployable until April 15, 2012, when Dr. Treves opined that Horn was unable to work while recovering from the second surgery performed on October 26, 2011. Thereafter, Dr. Treves was of the opinion that Horn could return to permanent light-duty restrictions.

We recognize that Horn expressed doubt that he could return to any type of employment; however, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Upon our review, we find no evidence that Horn was disabled by a condition or conditions unrelated to his work at the time of his second back operation in October 2011. We find sufficient competent evidence in the record to warrant the compensation court's award.

We note that Gra-Gar also argues that Horn's September 2009 award of Social Security disability benefits shows that he had no residual earning capacity afterward. However, we have found sufficient competent evidence supporting the compensation court's award, and as discussed below, an award of Social Security disability benefits does not automatically disqualify a claimant from receiving workers' compensation benefits.

We next address Gra-Gar's contention that the award was contrary to Nebraska law. Gra-Gar relies on *Neneman v. Fallstaff Brewing Corp.*, 237 Neb. 421, 466 N.W.2d 97 (1991), and *Olivotto v. DeMarco Bros. Co.*, 273 Neb. 672, 732 N.W.2d 354 (2007). In each of those cases, the Nebraska Supreme Court affirmed determinations that the claimants were not entitled to workers' compensation benefits because the evidence showed that they had been totally disabled by conditions unrelated to their employment before they applied for such workers' compensation benefits. Gra-Gar relies on *Neneman* in particular, because the claimant in that case was not employed and had received an award of Social Security disability benefits. In *Neneman*, an expert opined that the claimant could not engage in any type of employment as a result of health issues unrelated to his employment. Unlike the claimants in *Neneman* and *Olivotto*, the record contains evidence that Horn had some residual earning capacity despite the award of Social Security disability benefits. See *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009). The only evidence of the basis of his Social Security disability benefits is his application for such, and his testimony that he got the benefits because of chronic manic depression and tremors, not because of the brain tumor or the back injury.

Nebraska law does not preclude a finding as a matter of law that a claimant can receive both Social Security disability benefits and workers' compensation benefits for loss of earning capacity. To the extent that Gra-Gar argues otherwise in its brief, we disagree.

In *Manchester, supra*, the Nebraska Supreme Court found that the trial judge and the review panel were correct in concluding that because the claimant had earning power to lose, her receipt of Social Security disability benefits based on an earlier determination of total disability did not prevent her from recovering workers' compensation benefits. The court in *Manchester* further noted that the Social Security Act anticipates the instance where an individual receives both Social Security and workers' compensation benefits by statutorily providing for an offset from the individual's Social Security payments. In the present case, there was evidence that Horn retained some residual earning capacity prior to the second surgery on October 26, 2011, and we find that the compensation court was not precluded from making an award despite an award of Social Security disability benefits. Moreover, the compensation court acknowledged the offset provision when it cited *Manchester*, noting that "[t]he Nebraska Supreme Court has previously addressed the eligibility of an injured employee to receive workers' compensation which offsets Social Security disability."

Finally, Gra-Gar contends that the compensation court committed clear error in declining to rely on Horn's testimony and application concerning the basis for his Social Security disability determination, both of which focused on conditions unrelated to Horn's employment. But, assuming he was drawing Social Security disability benefits for unrelated conditions, he is not automatically disqualified for workers' compensation benefits.

In the final analysis, we find no clear error. As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony, and there is sufficient evidence to support the award. See *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). The receipt of Social Security disability benefits is not a disqualifier from receiving workers' compensation benefits as a matter of law, but, rather, the effect of such is driven by the facts of each case.

## CONCLUSION

For the foregoing reasons, we conclude that the compensation court did not err in awarding temporary total disability benefits commencing October 26, 2011, and we affirm.

AFFIRMED.